## STEPHENS COUNTY ET AL. v. MID-KANSAS OIL & GAS COMPANY.

### No. 3569.   Decided June 30, 1923.

### (254 S. W., 290.)

**1.—Taxation—Oil Lease.**

A lease of land conveying to the grantee the right to enter and operate thereon for the discovery of oil and gas and to appropriate them if discovered, paying to the lessor rent and a certain portion of the proceeds thereof as royalty, is a transfer to the lessee of an interest in the land, independently taxable under Articles 7503, 7504, Rev. Stats., as real property. (Pp. 166-176).

**2.—Same—Land—Minerals—Oil and Gas.**

Oil and gas in place in the soil are minerals forming a part of the soil, belonging to the owner thereof and subject to sale as a part of the land before they are removed and reduced to possession as personalty, like solid minerals such as coal or iron; and this though, unlike the latter, being fluid, they may be drawn off and appropriated by an adjoining proprietor through wells on his own land. Bender v. Brooks, 103 Texas, 335; Right of Way Oil Co. v. Gladys City O. G. & Mfg. Co., 106 Texas, 103; Swayne v. Lone Acre Oil Co., 98 Texas, 597; discussed. Brown Oil & G. Co. v. State, 231 S. W., 1090, limited. Texas Co. v. Daugherty, 107 Texas, 234, followed. (Pp. 166-176).

**3.—Oil and Gas—Lease—Conveyance.**

An oil lease giving the grantee exclusive right to enter on the land, mine for, and appropriate all oil and gas in place in the soil, conveys to the lessee a complete dominion over such minerals as a conveyance of title to same, and has the same effect of separating the title to such minerals in place and before produced, from that to the surface soil, and vesting the former in the lessee. Nor is it affected by the grantor's reservation of a royalty from the minerals so discovered and appropriated. Such instrument is a conveyance of an interest in the land and not of a mere license or incorporeal hereditament. Benavides v. Hunt, 79 Texas, 383, and cases in other states followed. Expressions in Texas Co. v. Daugherty, 107 Texas, 226, limited. Those in Southern Oil Co. v. Colquitt, 28 Texas Civ. App. 292, approved. (Pp. 169-173).

**4.—Same—Cases Distinguished.**

The cases of taxation of franchises of a railroad (Austin Ry. Co. v. State, 94 Texas, 530; Texas Southern Ry. Co. v. Harle, 101 Texas, 181) and of ordinary leases of land for purposes of cultivation, are distinguished from leases of mineral rights. (Pp. 175, 176).

Question certified from the Court of Civil Appeals for the Second District, in an appeal from Stephens County.

*Goggins, Bateman & Leaverton, D. A. Eldridge, Chas. L. Black, W. A. Keeling,* Attorney General, and *C. F. Smith,* assistant, for appellants, Stephens County, et al.

We cite the following authorities upholding the proposition that these so-called leases create an interest in land, taxable as such against the lessee. Texas Co. v. Daugherty, 107 Texas, 226; State v. Downman, 134 S. W., 787; Graciosa Oil Co. v. Santa Barbara County (Cal.), 99 Pacific, 483, 20 L. R. A. (N. S.), 211; Wolfe County v. Beckett (Ky.), 105 S. W., 447, 17 L. R. A. (N. S.), 688; People v. Bell, 237 Ill., 332, 19 L. R. A. (N. S.), 746, 86 N. E., 593; Trans-Continental Oil Co. v. Emmerson (Ill.), 131 N. E., 645, and cases cited; Wilson v. Youst, 28 S. E., 781, 39 L. R. A., 292; Mount Sterling Oil & Gas Co. v. Ratliff (Ky.), 104 S. W., 993; In Re DeWitt's Estate, 266 Pa. St., 548, 109 Atlantic, 699 (to be considered in connection with Barnsdall v. Bradford Oil Co., 225 Pa. St., 338, 74 Atl., 207); Washburn v. Gregory Co., 125 Minn., 491, 147 N. W., 706; Railway Co. v. Sanderson, 1 Atl., 394, 58 Am. Rep., 743; Shaw v. Watson, 92 So., 375.

The oil leases in this case do vest in the lessees the ownership of the oil and gas in the land; oil is a mineral; and when ownership of minerals in land is owned in whole or in part by a person other than the owner of the surface, such ownership is an interest in land, and as such, is taxable as real property. Thornton on Oil and Gas, 2d Ed., Secs. 18, 19, 20; 27 Cyc., p. 629; So. Oil Co. v. Colquitt, 69 S. W., 169; Cox v. Robison (Sup.), 150 S. W., 1149; Texas Co. v. Daugherty, 107 Texas, 231; Wagner v. Mallory, 169 N. Y., 501, 62 N. E., 584; Ohio Oil Co. v. Indiana, 177 U. S., 190; Benavides v. Hunt, 79 Texas, 383; Staley & Barnsdall v. Derden, 121 S. W., 1136; Wolf Co. v. Beckett (Ky.), 105 S. W., 447, 17 L. R. A. (N. S.), 688; State v. Downman, 134 S. W., 787; Barnsdall v. Bradford Gas Co., 225 Pa., 338; Malcomson v. Wappoo Mills, 85 Fed., 907; Stinson v. Hardy, 27 Oregon, 584; Young v. Ellis, 91 Va., 297; Woodland Oil Co. v. Crawford, 55 Ohio State, 161; Paul v. Cragnaz, 25 Nev., 293; Kirk v. Mattier, 140 Mo., 23; Consolidated Coal Co. v. Peers, 150 Ill., 344; Von Baumbach v. Sargent Land Co., 219 Fed., 31; McKean Natural Gas Co. v. Wolcott, 98 Atl., 955; Rich v. Doneghey, 177 Pac., 86; Beckett v. Backer, 178 S. W., 1084; Gracioso Oil Co. v. Santa Barbara County, 99 Pac., 483.

A leasehold for more than one year is an estate or interest in land. Art. 1103, Revised Civil Statutes; Dority v. Dority, 96 Texas, 215; Starke v. Guffey Petroleum Co., 98 Texas, 542; Priddy v. Green, 220 S. W., 243; Beckett v. Backer, 178 S. W., 1084.

*Penix, Miller, Perkins & Dean,* for appellee.

The oil leases attached to appellee's first amended original petition simply grant the right to prospect upon the land therein mentioned for oil or gas and reduce those substances to possession and ownership and do not constitute property within the meaning of the Statute of Texas subject to taxation. National Oil & Pipe Line Co. v. Teel, 68 S. W., 979; Bailey v. Williams, 223 S. W., 311; Owens v. Corsicana Oil Co., 169 S. W., 194; Witherspoon v. Staley, 156 S. W., 558; O'Neil v. Sun Co., 123 S. W., 172.

The foregoing authorities are on the proposition that the leases in question do not convey an interest in land. Since they do not convey an interest in land then they are not subject to taxation under the laws of this State. Texas Co. v. Daugherty, 176 S. W., 717; Austin and Northwestern R. R. Co. v. State, 94 Texas, 530; Daugherty v. Thompson, 71 Texas, 192; Trammell v. Faught, 12 S. W., 317.

A contract or lease in order to be subject to taxation in this State must be such a contract or lease as conveys an interest in land; and the leases in question in this case do not convey an interest in land, but merely grant the privilege or right of exploring the lands for the purpose of discovering oil and gas, if any, thereon and same are therefore not subject to taxation in this State. Same authorities.

The leases in question in this case merely grant the right for a specified term of years to enter upon the lands therein described and make explorations for or mine for oil and gas and are not chattels subject to taxation in this State. Vernon's Sayles Texas Civil Statutes, 1914, 7505; Jesse French Piano and Organ Co. v. City of Dallas, 61 S. W., 946; 37 Cyc., page 781; Daugherty v. Thompson, 71 Texas, 192.

It has been uniformly held in this State that the leases in question are options and do not convey a part of the realty, or an interest therein, and that the lessees acquire only a right or license to develop and appropriate the minerals when obtained, and that lessees do not acquire any title to such minerals in place. Owens v. Corsicana Oil Co., 169 S. W., 194; Witherspoon v. Staley, 156 S. W., 557; O'Neil v. Sun Co., 123 S. W., 172; Grubb v. McAfee, 212 S. W., 464; Pierce-Fordyce v. Woodrum, 188 S. W., 245; Leath v. Humble Co., 223 S. W., 1022; McLaughlin v. Brock, 225 S. W., 575; Varnes v. Dean, 228 S. W., 1017; Griffin v. Bell, 202 S. W., 1034; McKay v. Tally, 220 S. W., 167; Bailey v. Williams, 223 S. W., 311.

### In support of motion for rehearing.

The court erred in its opinion herein in holding the lease under consideration and set forth in the certified question from the Court of Civil Appeals to be such an instrument as conveyed to the grantee

therein the title to the oil and gas in place in the land mentioned and described in said lease. Texas Co. v. Daugherty, 176 S. W., 717; National Oil Co. v. Teel, 95 Texas, 586; Forney v. Ward, 62 S. W., 108; Hodges v. Brice, 74 S. W., 590; O'Neal v. Sun Co., 123 S. W., 172; Witherspoon v. Staley, 138 S. W., 1191; Same case, 156 S. W., 557; Austin & Northwestern Ry. Co. v. State, 94 Texas, 530; Daugherty v. Thompson, 71 Texas, 192; Trammell v. Faught, 12 S. W., 317.

The following decisions construe instruments substantially identical with the instrument under consideration and hold that no title passes to mineral in place by virtue of such instrument, and that lessee acquires only a right or license to explore for or discover and appropriate the oil and gas in said land covered by such lease and appropriate same, if discovered, paying owner of the fee a royalty upon the discovery and appropriation of oil or gas which may be found and reduced to possession on said premises so covered by such lease. Grubb v. McAfee, 212 S. W., 464; Pierce-Fordyce v. Woodrum, 188 S. W., 245; Emde v. Johnson, 214 S. W., 575; Aurelius v. Stewart, 219 S. W., 863; Hitson v. Gilman, 220 S. W., 140; Hunter v. Gulf Production Co., 220 S. W., 163; Leath v. Humble Co., 223 S. W., 1022; McCallister v. Texas Co., 223 S. W., 859; McLaughlin v. Brock, 225 S. W., 575; Varnes v. Dean, 228 S. W., 1017; Griffin v. Bell, 202 S. W., 1034; McKay v. Tally, 220 S. W., 167; Young v. Jones, 222 S. W., 691; Bailey v. Williams, 223 S. W., 311; Taylor v. Turner, 230 S. W., 1031; State v. Downman, 134 S. W., 787.

The rule announced in the court's opinion in this case is not only contrary to the rules heretofore announced in the Texas cases but is likewise contrary to the rules announced by most of the other States of the Union and is against the great weight, in our judgment, of authorities. The rule announced in most of the other States is set forth in the following cases: Kelly v. Keys, 62 Atl., 911; Plummer v. Coal & Iron Co., 160 Pa., 483; Wetengell v. Gormley, 160 Pa., 559; Westmoreland Gas Co. v. DeWitt, 130 Pa., 235; Funk v. Haldeman, 53 Pa., 229; Dark v. Johnston, 55 Pa., 164; Union Petroleum Co. v. Bliven Petroleum Co., 72 Pa., 173; Barnhart v. Lockwood, 152 Pa., 82; Blakley v. Marshall, 174 Pa., 425, 34 Atl., 564; Hicks v. American Natural Gas Co., 57 Atl., 55, 207 Pa., 570; Toothman v. Courtney, 58 S. E., 915; State v. South Penn. Oil Co., 42 W. Va., 80, 24 S. E., 688; Harvey Coal Co. v. Dillon, 53 S. E., 928; Paris Fork Oil Co. v. Bridgewater Gas Co., 51 W. Va., 583, 42 S. E., 655; Duff v. Keaton, 124 Pac., 291, and authorities there cited.

*H. G. Hendricks, R. F. Hardwicke, George C. Greer, F. C. Proctor,* and *D. Edward Greer,* as *amicae curiae* filed arguments in this case or briefs and arguments prepared in other cases involving the same question, in support of the position of appellee.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Appellee, Mid-Kansas Oil & Gas Company sued appellants, Stephens County, and the tax collector, tax assessor, county judge, and county commissioners of Stephens County, to enjoin the assessment and collection of taxes on any separate right or interest of appellee as the assign of the Texas & Pacific Coal Company, under the following instrument:

### "OIL AND GAS LEASE

"This lease made and entered into this 18th day of August, 1916, between S. R. Hill and wife, of Eliasville, County of Stephens, State of Texas, first parties, and the Texas & Pacific Coal Company, of Thurber, Erath County, Texas, second party:

"WITNESSETH, The first parties in consideration of forty one & 25/100 dollars ($41.25) to them paid, receipt of which is hereby acknowledged, and of the covenants hereinafter contained on the part of the second party, do by these presents, let and lease to the second party the following described premises, situated in Stephens County, Texas, to-wit: Being 165 acres of land and being the east part of Sec. No. 16, Blk. No. 2, cert No. 17/507, S. P. Ry. Co. land, in said Stephens County, Texas, containing 165 acres more or less, hereby granting to second party full and exclusive authority to enter upon said premises and to dig, drill, operate for and procure natural gas and petroleum together with the right of taking upon said premises and removing therefrom at pleasure any machinery, tools, lumber, pipe, casing and other things necessary in said work, and to construct on said premises and to remove therefrom, at pleasure, pumping plants, tracks, tanks, pipe lines and other things necessary in the operation of this lease, avoiding as far as practicable damages to fences and growing crops; but in case of damage to these, second party agrees to pay such damage, the same to be fixed by appraisers, should the parties hereto fail to agree to the amount of same.

"Should second parties discover on said premises natural gas in paying quantities and the same can be marketed to advantage, second party shall pay first party a royalty of ten per cent (10%) of the market price at the wells of the amount sold.

"In the event of the sale or marketing of petroleum, second party shall deliver as royalty to first parties, in tanks near the mouth of the well or wells, without cost to the first parties one-eighth (1/8) of such products, or pay the market price in cash thereof, at option of second parties, and the remainder of such product shall belong to the party of the second part.

"A deposit of the moneys herein provided for the credit of the first parties in The First National Bank of Breckenridge, Texas, shall be taken and accepted by them as payment.

"If gas is discovered in paying quantities on said premises, first party shall have gas free for domestic purposes for one house now on said premises.

"The second party shall have the free use of any water on said premises for drilling and operating purposes, except that no water shall be taken from any well used by the first parties without their consent.

"It is further agreed between the parties hereto, that in case natural gas or petroleum are discovered on said premises that this lease shall continue in full force and effect so long as any of these are produced in paying quantities, but in the event of second party failing to pay to first parties in advance on ten days notice in writing by first party to second party, as above provided, the ground rent due under the terms and provisions hereof, that this lease shall be null and void and the first and second parties shall be released from all liabilities mentioned.

"And whereas, second party agrees that prospect work shall begin within a term of 18 months from the date hereof, either on S. R. Hill's land, as shown by this lease, or on Geo. W. Hill's land, as shown by his lease, or on J. W. Hill's land, as shown by his lease, or on S. H. Hill's land, as shown by his lease to said second party, and in the event said second party is not prospecting on some one of the different tracts of land named in this or Geo. W. Hill, J. W. Hill or S. H. Hill's contract within the 18 months from the date hereof, then, in that event, said second party is to pay to first party one dollar per acre instead of 25c per acre for all the time said second party shall keep or hold said lease on said land after 18 months has expired.

"The second party agrees to drill no well, except by consent of first party, within 500 hundred feet of any building now on said premises.

"It is agreed by the parties hereto, that all the terms and conditions of this lease shall extend to and be binding on their heirs, executors and assigns.

"In witness whereof the parties of the first and second parts have hereunto set their hands and seals the day and year first above mentioned."

The instrument is duly signed and acknowledged by S. R. Hill and wife.

The suit was to also enjoin the assessment and collection of taxes on any rights or interests of appellee in and to 109 additional tracts of land, as the assign of the "second parties", under instruments in substantially the same form as the writing above copied.

The trial court overruled a general demurrer to appellee's petition and rendered judgment restraining Stephens County and its officers from collecting the taxes.

Appellants perfected an appeal to the Fort Worth Court of Civil Appeals, presenting one assignment of error, complaining of the overruling of their general demurrer, on the ground that the instruments conveyed such interests in the respective tracts of land therein described as were independently taxable under articles 7503 and 7504 of the Revised Statutes.

The Honorable Court of Civil Appeals has certified to this court the single question whether appellee acquired, under the above mentioned instruments, such interests or such estates in land as were subject to separate taxation. The certificate recites that numerous suits involving the question are pending and that its authoritative determination is of the utmost importance.

Looking to the manifest intent of the parties, we do not think it difficult to arrive at a correct answer to the question. The subject matter of each contract was gas and oil in place. The principal consideration was royalties dependent on the marketing of the gas or oil. The land was leased for the purpose of prospecting for, producing and marketing these minerals, and for no other purpose It was solely to effectuate such purpose that the parties of the first part granted unto the parties of the second part, their heirs and assigns, full and exclusive authority to enter upon the lands and to conduct all necessary drilling and marketing operations. The gas or oil, in paying quantities, became the property of the parties of the second part, their heirs or assigns, who were obligated to pay to the parties of the first part, their heirs or assigns, the market price of one-tenth the gas sold, and to deliver to the parties of the first part, their heirs or assigns, one-eighth the oil, unless they elected to pay the market price of such oil, instead of making delivery thereof. On demand, the parties of the first part, their heirs or assigns, were also entitled to sufficient gas for domestic purposes in specified dwellings without charge. The exploratory term was eighteen months from date, subject to renewal for a reasonable time, on payment of stipulated sums per acre. The instruments were to continue in full force as long as gas or oil was produced in paying quantities.

Denial that these instruments passed separately taxable interests in lands is grounded first on the proposition that there is no such thing as ownership or conveyance of gas or oil in place, because, until the gas or oil is brought to the surface and reduced to possession, any owner of land adjacent to that containing the gas or oil may lawfully appropriate same.

The opinion in Bender v. Brooks, 103 Texas, 335, Ann. Cas., 1913A, 559, 127 S. W., 168, contains an expression that the owners of the land had "no *specific* title" to the oil therein until its removal from the earth, but the subsequent opinion in Right of Way Oil Co. v.

Gladys City Oil, Gas & Mfg. Co., 106 Texas, 103, 51 L. R. A., (N. S.) 268, 157 S. W., 737, makes clear that it was not intended to thereby deny that oil in place was capable of ownership: for both opinions were written by Judge Brown, who cites the case of Bender v. Brooks in support of the conclusion in the latter opinion that the owner of the soil owns the oil while beneath the surface, as a part of the land, though his title becomes more definite upon the oil's extraction.    The court had previously held that before oil is extracted it is a part of the land like such solid minerals as iron, coal and lead.    Swayne v. Lone Acre Oil Co., 98 Texas, 597, 69 L. R. A., 986, 8 Ann. Cas., 1117, 86 S. W., 740.

The opinion of the Commission of Appeals in Prairie Oil & Gas Co. v. State, 231 S. W., 1090, quotes with approval the statement in Gould on Waters that oil, like water, is not the subject of property until reduced to actual possession.    This portion of the opinion is not authoritative, because the Supreme Court adopted only the judgment recommended by the Commission.  As stated in McKenzie v. Withers, 109 Texas, 256, 206 S. W., 503: ''Our approval of the judgment recommended by the Commission is to be understood as having no further effect than to simply adopt the view of the Commission as to the determination to be made of the cause.   It is not to be considered as an approval by the Supreme Court of the opinion of the Commission in the particular case, or the reasons given in the Commission's opinion for its conclusions.''

We do not regard it as an open question in this State that gas and oil in place are minerals and realty, subject to ownership, severance and sale, while embedded in the sands or rocks beneath the earth's surface, in like manner and to the same extent as is coal or any other solid mineral.

The objection lacks substantial foundation that gas or oil in a certain tract of land cannot be owned in place, because subject to appropriation, without the consent of the owner of the tract, through drainage from wells on adjacent lands.  If the owners of adjacent lands have the right to appropriate, without liability, the gas and oil underlying their neighbor's land, then their neighbor has the correlative right to appropriate, through like methods of drainage, the gas and oil underlying the tracts adjacent to his own.   Ry. Co. v. East, 98 Texas, 146, 66 L. R. A., 738, 107 Am. St., 620, 4 Ann. Cas., 827, 81 S. W., 279; Gillette v. Mitchell, 214 S. W., 622.   Ultimate injury from the net results of drainage, where proper diligence is used, is altogether too conjectural to form the basis for the denial of a right of property in that which is not only plainly as much realty as any other part of the earth's contents, but realty of the highest value to mankind, and often worth far more than anything else on or beneath the surface within the proprietor's boundaries.

The question whether gas and oil in place were capable of separate ownership and sale was carefully considered and finally determined by this court in Texas Company v. Daugherty, 107 Texas, 234 to 240, L. R. A., 1917F, 989, 176 S. W., 717. The opinion in that case leaves no room for reasonable doubt as to the soundness of the conclusion that gas and oil in place are objects of distinct ownership and sale as a part of the land. Moreover, we regard that view as in harmony with the overwhelming weight of the authorities. The Law of Oil & Gas, Vol. 18, Michigan Law Review, p. 459.

But, it is earnestly insisted that the instruments conveyed only incorporeal hereditaments appertaining to the lands, and that the terms of the instruments precluded the vesting of title to the gas and oil save as personalty after being brought to the surface.

Ownership of the gas and oil in place meant having the exclusive right to possess, use and dispose of the gas and oil. The grantors were clearly divested of the right to either possess, use or dispose of the gas and oil in place in the lands described in the instruments here involved as soon as the instruments were executed. At the same instant, the right to possess, use and dispose of such gas and oil in place passed to the grantees in said instruments and to their assigns. Complete divestiture of title to the gas and oil could hardly be more clearly evinced than by the necessity for an express grant or reservation of even enough gas for domestic use in the grantors' dwellings. Dominion over a thing could not well be completer than it is in those persons who may, at their will, assign it to any other person, with or without consideration, for a time which may be forever. Sims v. Sealy, 53 Texas Civ. App., 518, 116 S. W., 630. The fact that whoever owns the gas and oil, under these instruments, is subject to certain obligations to the former owners, express and implied, with regard to exploration for, and production of, the gas and oil, and with regard to the payment of royalties, in no wise reinvests the former owners with title. Nor does the possibility of future reversions accomplish present reinvestitures of title in the former owners.

The Supreme Court of Pennsylvania decided at an early day that the grant of the right to take away coal to any extent a grantee might desire was a conveyance of no incorporal hereditament but of title to the coal. The decision rests on the following unassailable conclusion: "The grant of a thing can be no more than the grant of the full and unlimited use of it. So, too, the general power of disposal without liability to account is equivalent to ownership itself." Caldwell v. Fulton, 31 Pa. St., 483-488, 72 Am. Dec., 760.

Reaffirming the doctrine, the same court said: "Where the subject and purpose of the grant involve the mining and removing of the entire thing granted, to be held by the grantee and his heirs until it shall be so mined and removed in accord with his covenants, how

can it be said that he takes for a term? What can be more uncertain than the date when the subject shall be exhausted? What greater estate in the mineral underlying the surface of a tract of land can a man have than the right in himself, his heirs and assigns, to mine and remove the whole of it? If his title is burdened with covenants and conditions insuring his payment of the purchase money, the burden does not affect the nature of the estate." Delaware, L. & W. Ry Co. v. Sanderson, 109 Pa. St., 583, 58 Am. Rep., 743, 1 Atl., 397.

In Appeal of Stoughton, 88 Pa. St., 201, approved in Blakley v. Marshall, 174 Pa. St., 429, 34 Atl., 564, and in Jennings v. Bloomfield, 199 Pa. St., 641, 49 Atl., 135, it was determined that a guardian could no more grant, without authorization of the Orphans' Court, an exclusive right to bore and dig for, and collect the oil from land of his ward, for a term of twenty-one years, than he could grant an exclusive right to mine coal from his ward's land. The opinion is to the effect that oil, like coal, is a part of the realty, which can be conveyed only on order of the Orphans' Court, and that the grant of the exclusive right to remove oil from the ward's land was "in effect the grant of part of the corpus of the estate and not of a mere incorporeal right."

The lease in Barnsdall v. Bradford Gas Co., 225 Pa. St., 338, 26 L. R. A. (N. S.), 614, 74 Atl., 207, was similar in many respects to the instruments before us. It demised the land for the sole purpose of operating for gas, oil and other minerals for a term of ten years and as much longer as the operations continued, in consideration of one dollar and of the delivery in the pipe lines of the equal one-eighth part of the oil produced and saved from the premises. The lessee brought an action of ejectment to recover possession against a stranger deriving no right under the lessee or lessor. The suit was defended on the ground that the lease conveyed no interest in the land but a mere license to operate for oil. In declaring that the lessee was entitled to recover, the court said: "By the agreement *the exclusive right to take and appropriate all the minerals* is conveyed, and during the term of the lease the lessor has no right to enter and operate for oil or gas. *The title to the oil, except the one-eighth thereof, is vested in the lessee, as is also the title to the gas and other minerals in the land.* Under the rule of construction established, not only in other jurisdictions, but by our own cases, therefore, the agreement creates a corporeal interest in the lessee in the demised premises, and is not merely a license to enter and operate for oil and gas." To the same effect are McIntosh v. Ropp, 233 Pa. St., 497, 82 Atl., 954 and DeWitt's Estate, 266 Pa. St., 550, 109 Atl., 699.

The case of Benavides v. Hunt, 79 Texas, 383, 15 S. W., 396, required the Supreme Court of Texas to determine the nature of the interest created by a grant of only "*the right* to mine coal or other

minerals'' in a certain tract of land, such right declared exclusive, with habendum clause reading ''to have and to hold the above described mining rights unto the parties of the second part for the full term and period of fifty years.''

The grantee sued the grantors to recover possession of coal mines on the tract. The grantors based their defence in part on the statute of limitations of four years. After concluding that the grantee's suit was barred unless it was an action to recover real estate, the court, in a careful opinion by Chief Justice Stayton, decided that the grant was not of an incorporeal right but that it effected a severance of the property in the strata of minerals from the property in the remainder of the land, the mineral strata being as much *land* as the non-mineral portion of the soil. It was accordingly adjudged that the suit was not barred because the only statutes of limitations which applied were those relating to suits to recover real estate.

The portion of the opinion disposing of the question of limitations closes by citing Caldwell v. Copeland, 37 Pa. St., 430, 78 Am. Dec., 436, and Armstrong v. Caldwell, 53 Pa. St., 288. These cases involved the same grant as did Caldwell v. Fulton, supra, that is, the grant of the exclusive right to appropriate coal to any extent desired by the grantee and his assigns. It was decided in the last of the three cases, viz, Armstrong v. Caldwell, supra, in harmony with the decisions in the two previous cases, that the grant effected a severance of the title to the coal from the title to the remainder of the land, creating two distinct corporeal hereditaments.

We do not think that any distinction in principle lies between the title acquired under a grant of solid minerals and the title acquired under a grant in the same form of gas and oil. The reason why the grant of the exclusive right to possess, use and appropriate gas and oil should be given the same effect as a like grant with respect to solid minerals was thus stated in Hague v. Wheeler, 157 Pa. St., 341, 22 L. R. A., 141, 37 Am. St., 736, 27 Atl., 714, viz; ''But it is said that the oil and gas are unlike the solid minerals, since they may move through the interstitial spaces or crevices in the sand rocks in search of an opening through which they may escape from the pressure to which they are subject. This is probably true. It is one of the contingencies to which this species of property is subject. But the owner of the surface is an owner downward to the centre, *until* the underlying strata have been severed from the surface by sale. What is found within the boundaries of his tract belongs to him according to its nature. The air and the water he may use. The coal and iron or other solid minerals he may mine and carry away. The oil and gas he may bring to the surface and sell in like manner to be carried away and consumed. His dominion is, upon general principles, as absolute over the fluid, as the solid minerals. It is exercised in the

same manner, and with the same results. He cannot estimate the quantity in place of gas or oil as he might of the solid minerals. He cannot prevent its movement away from him, towards an outlet on some other person's land, which may be more or less rapid, depending on the dip of the rock, or the coarseness of the sand composing it; but so long as he can reach it and bring it to the surface, it is his absolutely, to sell, to use, to give away, or to squander, as in the case of his other property.''

Much reliance is put on such expressions in the opinion in the case of Texas Company v. Daugherty, 107 Texas, 226, L. R. A., 1917F, 989, 176 S. W., 717, as that if the effect of the instruments there considered had been but the creation of a privilege to devote the land to a certain use, coupled with the right to appropriate a portion of such gas or oil as might be discovered, the privilege and right would not be separately taxable. The court's determination that the instruments before it had an altogether different legal effect makes it obvious that these expressions concerned matters not presented for decision. It was never intended that such argumentative expressions should be taken as authoritative.

There is a difference in the form of the instruments dealt with in the Daugherty case and those now under consideration. The instruments involved in the Daugherty case expressly conveyed the minerals in the lands, and granted the exclusive right to conduct operations to mine, store and transport same. They recited they were not intended to create franchises but were intended and understood to be conveyances of property and privileges. The instruments involved here lease the lands themselves and grant the exclusive right to prospect for, produce, and dispose of the minerals. The considerations for the two sets of instruments are not substantially dissimilar. Whatever was granted might be held under all the instruments as long as gas or oil was produced in paying quantities. The following statements in the opinion in the Daugherty case are equally true of the instruments now before the court, save that the distances within which wells might be located from houses were not the same, viz: ''For the purpose of making the exploration and producing all the oil, gas and other minerals that might be within the ground, and the erection of all structures necessary thereto, as well as their storing and transportation, the possession of the land itself is likewise granted, with no limitation upon the number of wells or shafts that the grantee might sink, or the extent of its operations in that connection, and consequently no qualification of its right of possession to all such parts of the surface,—except that no well should be drilled nearer than 200 feet from the house or barn on the premises without the consent of both parties,—as might be necessary to its full use by the grantee for the purposes named. . . . The instruments

throughout treat these minerals in the ground as property, and bespeak the purpose to give the grantee absolute dominion over them, not merely when severed from the realty and reduced to personalty, but while in their natural state; and the interest granted was furthermore expressed as one capable of being assigned and conveyed by the grantee.'' We find it impossible to reasonably ascribe to the two sets of instruments, disregarding mere form and looking at substance, any different legal effects as regards the transfer of title to the oil and gas in place.

Notwithstanding the distinctions attempted to be drawn in the decisions, we cannot conclude otherwise than that there is no real difference in the title conveyed, whether an instrument takes the form of a grant of the exclusive right to mine and appropriate all of a certain mineral—as in Benevides v. Hunt, supra—or takes the form of a demise of the land, for the sole purpose of mining operations, coupled with a grant of the exclusive right to produce and dispose of the mineral—as in this case—or takes the form of a grant of the mineral with the exclusive right to mine for, produce, and dispose thereof—as in Texas Company v. Daugherty, supra. The results are substantially the same to all parties at interest, whether the one or other form of instrument be used. Why hold that instruments in different forms create different estates, where there is no difference in fact with respect to that of which each divests the grantor, his heirs or assigns, nor with respect to that with which each invests the grantee, his heirs or assigns?

In Wolfe County v. Beckett, 127 Ky., 252, 105 S. W., 447, 17 L. R. A. (N. S.), 689, the Court of Appeals of Kentucky had before it leases granting ''the right to drill for oil and gas for a definite term of years, and, in case oil or gas is found in paying quantities, to continue said operations so long as same is found in quantities that pay,'' in consideration of certain royalties in oil and gas. In holding such leases as effective as conveyances would have been to pass title to the oil and gas in place, the court said: ''During the continuance of the lease, the ownership of the oil or gas is vested in the lessee; and, as the lease continues so long as oil or gas may be found in paying quantities, does not the lessor part with his title to the oil in situ for all practical purposes, for the reason that it has no value if it cannot be produced in quantities that pay? We therefore conclude that the form of contract is immaterial, and that it makes no difference whether the oil or gas privileges be conveyed by deed or lease, just so the effect of the instrument is to vest in the lessee all property rights to the oil or gas that may be found in paying quantities on the leased premises.''

Mr. Hardwicke says in his work on Innocent Purchaser of Oil and Gas Lease, at page 11: ''From a practical standpoint, the rights of

the lessee in an instrument using the language 'grant, sell and convey' are the same as if holding under an instrument using the language 'lease, demise and let.' In each instance the lessee is given the right to enter and develop and to appropriate the production, and this right terminates if not exercised within a stated period, or if consideration is not paid for delay in commencing operations, and at all events the right terminates at a definite time if production is not obtained in paying quantities. Whenever production is obtained in paying quantities, the right to develop and to produce continues as long as the mineral is produced in paying quantities.

"A lessee has no more privileges under one type of instrument than he has under the other. The instruments simply provide for the development of the land and distribution of the minerals which are discovered. For this reason, the parties usually attach little or no significance to the language in the granting clause. The thing that the landowner is interested in giving, and the thing that the operator is interested in obtaining, is the right to enter on the land, to the exclusion of all others, for the purpose of discovering and producing minerals that exist, and to distribute such minerals in accordance with the lease, usually one-eighth to the landowner and seven-eighths to the operator."

While not necessary to the decision of the case, the Court of Civil Appeals announced a sound rule when it declared: "An oil lease investing the lessee with the right to remove all the oil in place, in consideration of his giving the lessor a certain per cent. thereof, is, in legal effect, a sale of a portion of the land." Southern Oil Co. v. Colquitt, 28 Texas Civ. App., 296, 69 S. W., 169.

Passing to the consideration of the precise nature of the title created by the instruments before us, it seems obvious: first, that the grants might endure forever, since the lands might never cease the profitable production of oil or gas, and, second, that it was intended by all parties that the lands should be used for no other purpose than the specified mineral exploration and production, and that the grants were to be enjoyed only while such use continued and were to immediately terminate on cessation of the use.

At common law, a grant of land for such a term and for such use and purpose—and no other—created the estate called a base, qualified, or determinable fee, defined by Kent as "an interest which may continue forever, but the estate is liable to be determined, *without the aid of a conveyance,* by some act or event, circumscribing its continuance or extent." Kent's Commentaries, Vol. IV, pp. 8, 9.

The instruments under consideration come within Tiffany's illustration of typical determinable fees, when he says: "So, when land is granted for a certain purpose, as for a schoolhouse, a church, a public building, or the like, and it is evidently the grantor's intention that

it shall be used for such purpose only, and, that, on cessation of such use, the estate shall end, without any re-entry by the grantor, an estate of the kind now under consideration is created." Tiffany, Real Property, Vol. 1, p. 334.

Corpus Juris mentions as a qualification of the fee rendering it determinable that "which attaches itself to the use of the land so that the estate is held to be granted for that use and purpose only, and on the cessation of the use the estate expires." 21 C. J., 922.

In Texas & P. Ry. Co. v. Durrett, 57 Texas, 48, this court had to determine the nature of the estate created by a grant to a railway company of a right of way through and over a certain survey of land, together with the right to use the wood, timber, water, soil, gravel or stone therefrom, with a habendum clause reading "to have and to hold the same for the uses and purposes aforesaid unto said company and its successors forever." It was decided that the Railway Company took under the grant more than a perpetual easement, and that it acquired "a qualified determinable fee, liable only to be divested if the estate is used for purposes other than that contemplated by the conveyance," citing State v. Brown, 27 N. J. L. (3 Dutcher) 13.

The instruments mentioned in the certificate of the Court of Civil Appeals have passed to appellee determinable fees in the lands; leaving in the grantors, their heirs or assigns, the possibility of re-acquiring the absolute fee simple titles, less whatever minerals may be meantime produced and marketed. State v. Brown, 27 N. J. L. (3 Dutcher) 20; Watford Oil and Gas Co. v. Shipman, 233 Ill., 9, 122 Am. St., 144, 84 N. E., 53; Slegel v. Lauer, 148 Pa. St., 236, 15 L. R. A. 549, 550, 23 Atl., 996.

Our Constitution requires the taxation, in proportion to its value, of all property, save such as the Legislature is authorized to exempt. Secs. 1 & 2, Art. VIII. The owner is required to render and pay taxes on all lands and other property subject to taxation in the county where situated. Failure of owners to make the required renditions authorizes assessments at fair values by the proper officers. Sec. 11, Art. VIII. The taxes on landed property are secured by special lien thereon, and payment may be enforced by the seizure and sale of any and all property of the delinquent owner. Sec. 15, Art. VIII. In releasing the minerals to the owners of lands previously patented, the Constitution expressly declares the minerals "subject to taxation as other property." Sec. 7, Art. XIV.

Article 7509 R. S. provides that each person shall render for taxation all of his real estate, etc. Article 7504 R. S. declares: "Real property, for the purpose of taxation, shall be construed to include the land itself, whether laid out in town lots or otherwise, and all the buildings, structures and improvements, or other fixtures of whatso-

ever kind thereon, and all the rights and privileges belonging or in any wise appertaining thereto, and all mines, minerals, quarries and fossils in and under the same.''

The cases of Texas Co. v. Daugherty, supra, and State v. Downman, 134 S. W., 787; Downman v. State, 231 U. S., 356, 357, 58 L. Ed., 264, construe these constitutional and statutory provisions to authorize the separate taxation of the value of a defeasible title in fee to gas and oil in place, when such title has been severed, by grant, from the title to the remainder of the tract containing the gas and oil. The decisions are in accord with the manifest intent of the Constitution that ''the land of one person should not pay the taxes that ought properly to be paid by the land of another.'' Washburn v. Gregory, 125 Minn., 491, L. R. A., 1916D, 304, 147 N. W., 706. He who owns mines and minerals as land and enjoys the benefits of ownership is justly chargeable with all the burdens thereof.

Our conclusions are not in conflict with the decision in Austin Ry. Co. v. State, 94 Texas, 530, 62 S. W., 1050, that the franchise of a railroad corporation is not taxable separately from its real estate. The law forbids the severance of properties and franchises of railroad corporations on grounds having no possible relation to the ordinary severance of estates by the conveyance of minerals in place. Texas Southern Ry. Co. v. Harle, 101 Texas, 181 to 185, 105 S. W., 1107.

It is unnecessary, in disposing of this case, to decide whether taxable interests or estates in real estate are created by the usual term leases of land, for purposes of ordinary cultivation or occupancy, granting no right to appropriate any portion of the land. Such leases are essentially different in their nature and effect from conveyances of gas and oil in place. Though an oil lease be so construed as not to pass a present title to gas and oil in place, the courts recognize that it may create a separately taxable estate in land, when no such estate would be recognized under an ordinary lease providing for return of rented premises not depleted after a fixed term.

On this subject the Supreme Court of California says: ''Except when held for speculative purposes, the value of land usually depends on the value of the use and occupation, and consists of a sum equivalent to a principal which, at the rate of interest usual upon safe investments, will bring a net annual income equal to that which the land will produce. The lessor or landowner annually receives a sum as rent which he deems the equivalent of this annual income, or of the value of the use of the land to him, and therefore he enjoys the entire beneficial interest in the premises, including the value of the leasehold as well as of the fee. . . . The royalty is frequently fixed before the discovery of oil, usually at a time when the existence of oil in profitable quantities is a matter of conjecture, and without regard to the adjustment between the parties of the burden of taxa-

tion upon the respective interests. The value represented by the royalty is ordinarily very small as compared to that of the right of the lessee. After the discovery of oil in such leased ground, the value of the lessor's real interest and right is much less than it would be if he had the whole estate, including all the oil thus discovered. There is no real parallel between such a case and that of a lessor under an ordinary lease for occupation and use. It is well known that such leasehold estates or interests in oil strata, after a discovery of oil, often command large prices in the market, out of all proportion to the value of the interest of the landowner receiving only the royalty and enjoying the use only for other purposes. The right of the lessee under this contract is more than that of the ordinary lessee. It is of a different character and for a different purpose. He has no right at all to the usufruct of the soil. His right extends to the extraction of a certain part of the substance of the land itself, to its permanent separation and removal and its conversion to his own use. The whole object of the contract is to effect, if not technically a sale and conveyance of a substantial and specific part of the land, at least a disposition and transfer thereof to another.'' Graciosa Oil Co. v. Santa Barbara County, 155 Cal., 140, 99 Pac., 483, 20 L. R. A. (N. S.), 212 to 214. See also Shaw v. Watson, 151 La., 893, 92 So., 375; Wolfe County v. Beckett, 127 Ky., 252, 105 S. W., 448, 17 L. R. A. (N. S.), 691; Transcontinental Oil Co. v. Emmerson, 298 Ill., 394, 131 N. E., 645, 16 A. L. R., 507.

Our answer to the certified question is that the appellee did acquire interests and estates in the lands which were subject to separate taxation.

Chief Justice Cureton took no part in the decision of this case.