## HARRIS v. LONE STAR GAS CO. (No. 339.)

Court of Civil Appeals of Texas. Eastland.
June 21, 1929.

Rehearing Denied July 12, 1929.

Grisham Bros., of Eastland, for appellant.

Conner & McRae and J. R. Stubblefield, all of Eastland, for appellee.

LESLIE, J. On motion for rehearing, the appellant, John G. Harris, concedes that in reversing and remanding this cause a correct result was reached; but he requests the court to amplify its expressions and conclusions on the controlling propositions presented by the appeal. We grant this request, and, although in no respect altering the legal effect of the original opinion, we re-express and amplify the same, withdrawing the original and substituting this one therefor.

The plaintiff's first amended petition in this cause was filed in the lower court January 6, 1925. Trial was had December 17, 1926, and the court having sustained a general demurrer to plaintiff's petition and entered a judgment accordingly, the appellant, plaintiff below, appealed, filing the record in this court February 10, 1927. The cause was submitted June 24, 1927, but final disposition thereof has been postponed from time to time, awaiting the action of our Supreme Court on appeals taken in the case of Reynolds v. McMan Oil & Gas Co. (Tex. Civ. App.) 279 S. W. 939, 11 S.W.(2d) 778, 14 S.W.(2d) 819, and the case of Connellee v. Magnolia Petroleum Co. (Tex. Civ. App.) 279 S. W. 597, 11 S.W.(2d) 158, both of which were appealed from this court, and involving, substantially, the same controverted issues that appear in this record. Such a course has been pursued in the interest of economy in cost to litigants, as well as economy of time and labor to this court, and especially because we have felt the need of an authoritative expression from our Supreme Court upon the points involved and already before that court, as indicated.

The instant litigation grows out of the rights claimed by the lessor and the lessee and its assigns, under and by virtue of the terms of a certain oil and gas lease, which by comparison we find to be substantially the same as the lease involved in the case first mentioned above. The consideration in the lease here involved, in so far as royalties and rentals are concerned, is as follows:

"In consideration of the premises the said lessee covenants and agrees:

"1st. To deliver to the credit of lessor, free of cost, in the pipeline to which it may connect its wells, the equal one-eighth part of all oil produced and saved from the leased premises.

"2nd. To pay the lessor $300.00 each year in advance for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the time by making his own connections with the well at his own risk and expense.

"3rd. To pay lessor for gas produced from any oil well and used off the premises at the rate of $50.00 per year for the time during which such gas shall be used, said payments to be made each three months in advance."

By reference to the opinion in the Reynolds

Case (Tex. Com. App.) 11 S.W.(2d) 778, 780, it will be seen that the two leases contain similar covenants in the above respect. In the first paragraph of said opinion this language is used: "This case presents the question whether or not a lessor under the mineral lease in common use in this state may recover from the lessee for gasoline manufactured from casing-head gas under the stipulation for the usual royalty on oil produced and saved." The identical question arises in the instant case.

■ While there are several counts in the plaintiff's petition, we will here specifically notice the one (third count for gasoline) wherein the plaintiff, under the "one-eighth oil royalty provision," seeks to recover one-eighth of the gasoline manufactured from the casinghead gas, which was alleged to be oil, and which, as we interpret the opinion in the Reynolds Case, is held to be such, and so contemplated by the parties in the execution and delivery of the lease. If such product alleged to have been converted by the defendants and each of them be oil, it is not believed that it be material by what term or name the well from which it is taken be designated; that is, whether it be a gas well, gas from an oil well, or an oil well. The allegations in the plaintiff's petition set forth that large quantities of gasoline have been produced by the said defendants on lands covered by said lease, and that the share or portion thereof to which plaintiff was entitled under the lease has been converted. Such being the case made by the pleadings, unquestionably the trial court, in view of the opinion in the Reynolds Case, committed an error in sustaining the defendants' exceptions to plaintiff's petition, and it becomes our duty to reverse the judgment of the trial court and remand the cause for a trial on the facts.

■ As to the "proportion of the gasoline which the plaintiff is entitled" to recover, under his pleadings and upon the specific theory here under consideration, we believe the opinion in the Reynolds Case sufficiently specific. On this proposition the oil royalty provision of the lease is held to be controlling, and this would appear to be a sufficient answer to the question suggested by the appellant's contention. However, this would be subject, of course, to the qualification contained in the third paragraph of that opinion (Tex. Com. App.) 14 S.W.(2d) 819, 820, which is as follows: "The plaintiff in error likewise seeks a rehearing, and insists that defendants in error are liable for the gross value of one-eighth of the gasoline recovered not charged with the cost of reduction, upon the theory they are trespassers; the argument being that since in law plaintiffs in error were entitled to one-eighth part of the casing-head gas as it was delivered from the ground, the defendants in error, knowing of this right, as they must have known, are not good-faith trespassers to entitle them to their expenditures in treating the gas and recovering the gasoline. It is true the rights of the parties are to be determined by the terms of the lease, which, in turn, presents a question of law; but it does not follow that defendants in error have not acted in good faith. Indeed, the particular right is of such a nature as to challenge the best thought of all the courts through which the case has passed, and defendants in error should not be mulcted in damages for claiming a right to the gas under such circumstances."

This, we think, indicates the extent of appellant's possible recovery, except as the peculiar facts, if any, in this cause and which may be disclosed in the pleadings upon which he elects to go to trial, may present a situation calling for a different measure of damages or a different application of the principles announced in that portion of said opinion above quoted. Under the Reynolds Case, the authority upon which this opinion is specially based, we are of the opinion that the plaintiff's right to recover for gasoline as oil rests upon the theory presented in the count for gasoline here considered.

■■ A further contention of the appellant is that this court erred "in failing to pass upon and construe and give some expression disposing of the first count of plaintiff's petition, which is a count for the recovery of the value of all the natural gas appropriated by the defendant, it being clearly pleaded that the plaintiff, by the terms of his lease, which is quoted in said pleading, and which is also attached as exhibit, did not sell any part of his gas, but only permitted, by the terms of his lease, the use thereof, both on the premises and off the premises, and pleaded that the word 'use' as employed in the lease, did not constitute a sale of his gas, and wherefore he sued for same, or the value thereof." In dealing with this contention it must be borne in mind that the question of appellant's right to a portion of the gasoline is not involved. That matter having received a separate and distinct consideration in the preceding paragraphs of this opinion, we here deal strictly with the appellant's right in what he designates "natural gas" as stripped of the product known as "gasoline" or containing none. In discussing the third clause of the lease dealing with the considerations involved in the Reynolds Case—a similar clause being contained in the lease involved in the instant case—the Commission of Appeals used this language: "The third clause of the so-called royalty provision stipulates for the lessee to pay to the lessor 'for gas produced from any oil well and used off the premises at the rate of $100.00 per year for the time during which such gas shall be used, said payment to be made each three months in advance.' This does not purport to be, nor is it within itself, a grant, an ex-

ception, or a reservation. It is not a grant, for it is an obligation of the lessee. It is not an exception, for it is not an estate of a kind with the grant, and it is not a reservation, for it is not an estate or fee of any kind in real property. It is a personal obligation imposed upon the lessee by way of consideration, to be sure, but no more than the ordinary promise of rentals. It is the agreed compensation for a thing—gas—already granted.

"We have said that the stipulation with respect to gas produced from an oil well does not evidence a grant of such gas. This does not imply there was no such grant, for clearly there was. But the grant arises from the granting clause proper, precisely in the same manner and to the same extent that the oil was granted; the grant being for the 'sole and only purpose of mining and operating for oil and gas.'"

On motion for rehearing in the Reynolds Case (Tex. Com. App.) 14 S.W.(2d) 820, the court in its opinion used this language: "Clause (2) of the royalty covenant applies only to gas used from a well 'where gas only is found,' while clause (3) provides a similar rental for gas produced from an oil well. The clear intention of the instrument as a whole is to except from the grant 'one-eighth part of all oil produced and saved from the leased premises,' and to pay and accept a rental per well per annum for gas produced and used off the premises. The 'gas' mentioned in both sections, as we have shown in our original opinion, means gas, and not oil. The lease therefore in legal effect grants seven-eighths of the oil in place and all of the gas."

The granting clause in the lease involved in this case is as follows: "That the said lessor, * * * in consideration of $10.00 * * * and of the covenants and agreements * * * on the part of lessee * * * has granted, demised, leased and let, and by these presents does grant, lease, and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas * * * all that certain tract of land," etc.

It thus appears that, under said lease contract, the lessor parted with his title to all the minerals (oil and gas) in place (modified by *exception* for one-eighth oil royalty), and obtained a money consideration therefor, and, in addition, the usual one-eighth royalty for oil produced, together with $300 each year for gas from a well where gas only is found, while the same is being used off the premises, and $50 per year for gas produced from an oil well and used off the premises while same is so used. It is well understood, and is apparently recognized by the authorities generally, that the above language of the contract means plainly that an actual estate in the land, to wit, the mineral estate, was conveyed, without reservation as to any part of it. Authorities need not be cited upon this construction of such language, but the views of our Supreme Court upon the question are recorded in the following authorities: Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Thomason v. Reed (Tex. Civ. App.) 263 S. W. 1069; Summers on Oil & Gas, 197, 198; Ehlinger v. Clark (Tex. Sup.) 8 S.W.(2d) 667.

Under the above authorities, and especially the opinion in the Reynolds Case, it occurs to us that there is but one conclusion to be reached from the decisions, and that is that under the terms of the appellant's lease in the instant case, and for the considerations noted, the granting clause of the lease placed title to the "natural gas" in the lessee, and clothed it and its assigns with full and complete authority to sell or dispose of the same without incurring obligations other than may be found in the personal obligation of the lessee to pay the lessor $300 and $50 per year, respectively, under the provisions of sections 2 and 3, setting forth the considerations for the lease.

The record before us does not present a case wherein the lessee or its assigns has failed or refused to pay $300 per year or $50 per year, respectively, for gas from either character of well specified.

The petition of plaintiff alleging as against each and all of the defendants a case of conversion of his interest in oil, the judgment will necessarily have to be reversed and remanded as to all the defendants.

The judgment of the trial court will therefore be reversed, and the cause remanded, and all motions for rehearing are overruled.

FUNDERBURK, J. (dissenting). The writer has hesitated to express a dissent in this case. The question involved undoubtedly appears to be foreclosed by the decision in Reynolds v. McMan Oil & Gas Co., 11 S.W.(2d) 778, since the opinion in that case was adopted by the Supreme Court. Such fact alone may be sufficient to raise some question as to the propriety of a member of this court expressing contrary views. It also happens that the writer was of counsel in the Reynolds Case. His part was a minor one, it is true, being that of local attorney who merely assisted in the trial, but whose firm is, nevertheless, listed as counsel in the reports of the case. This fact adds to a feeling of reluctance to appear as exhibiting an extraordinary concern in the same question.

On the other hand, the writer has never entertained a firmer conviction about anything than that the decision in the Reynolds Case is fundamentally unsound. This alone would not warrant an expression of dissent, but in the opinion of the writer it is as true as the maxim, "Things equal to the same thing are equal to each other," that the opinion in Magnolia Petroleum Co. v. Connellee (Tex. Com. App.) 11 S.W.(2d) 158, is in conflict with the Reynolds Case. The opinion in the Connellee

Case, if less directly, was none the less certainly and expressly approved by the Supreme Court than the opinion in the Reynolds Case. This results from the express approval of the opinion in Magnolia Petroleum Co. v. Akin (Tex. Com. App.) 11 S.W.(2d) 1113, which for sole justification of the judgment recommended referred to and adopted the opinion in the Connellee Case. May not then a statement be justified which is designed to show that these decisions published for our guidance are in conflict, without subjecting the writer to a charge of unwillingness to yield his judgment to that of the superior court? And further, while candor compels the admission that there exists no just principle of distinction between this case and the Reynolds Case, it may be said with equal candor that the Supreme Court probably may take a different view of the matter. It is thought that the difference in the cases is more substantial, upon which to predicate a legal distinction, than exists between the Reynolds and Connellee Cases. So much by way of what it is feared may be looked upon as a lame effort to excuse or justify the airing of the writer's personal views upon a question that it may occur to some should be regarded as settled.

This is a "grant, lease and let" lease "for the sole and only purpose of mining and operating for oil and gas," etc., of certain land. The term of the lease is for five years from date, "and as long thereafter as oil or gas, or either of them is produced from said land by the lessee." Covenants made expressly in consideration of the grant are:

"1st. To deliver to the credit of lessor, free of cost in the pipeline to which it (lessee) may connect its wells, the equal one-eighth part of all oil produced and saved from the leased premises.

"2nd. To pay the lessor Three Hundred Dollars each year in advance for the gas from each well where gas only is found while the same is being used off the premises, and lessor to have gas free of costs from any such well for all stoves and all inside lights in the principal dwelling house on said land during the time by making his own connections with the well at his own risk and expense.

"3rd. To pay lessor for gas produced from any oil well and used off the premises at the rate of Fifty Dollars per year for the time during which such gas shall be used, said payments to be made each three months in advance."

Date of lease, July 12, 1919.

According to allegations of the petition, one well was drilled which was not an oil well but a gas well, the allegation being, "* * * a gas well was brought in on plaintiff's land above described which produced gas in paying quantities," etc. Throughout the entire pleading there is no suggestion that any other well was drilled.

There is set out as an exhibit, and referred to and adopted as a part of the pleading, a contract showing a sale of "at the mouth of the wells to Lone Star Gas Company * * * all of the merchantable gas, in its natural state, as produced, except casinghead gas, from all the wells now drilled, and which may hereafter be drilled" on the land. It is apparent that the exclusion from the sale of casinghead gas was because the contract included gas that may have thereafter been produced, and of course was so framed as to take care of the contingency of oil being discovered as well as gas. While there are several alternative claims, they may all be disregarded as having no support in any authority except the claim that large quantities of gasoline had been produced; that such gasoline was oil within the provisions of the contract; and that seven-eighths thereof belonged to plaintiff and had been converted, to plaintiff's damage in the sum of $5,000.

It will be well clear of controversial ground to say that the lease vested in lessee title to at least seven-eighths of the oil and all of the gas in the land. The estate granted is a determinable fee. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Reynolds v. McMan Oil & Gas Co. (Tex. Com. App.) 11 S.W.(2d) 778.

Undoubtedly the lease dealt with two different substances—oil and gas. Each party must be presumed to have thought that both knew the difference between these two substances, since they did not deem it necessary to define either of them in the lease. Such omission cannot be attributed to a supposition on their part that the difference was immaterial, because they expressly fixed their rights with reference to them in entirely different ways. Oil was "to be delivered to the credit of lessor free of cost in the pipeline." The $300 a well for the gas from a gas well was to be paid "each year in advance." Such payment was to be made only "while the same" was "being used off the premises." Lessor was to have such kind of gas necessary for stoves and lights in the principal dwelling house free of cost. No such right to oil for any purpose or gas from an oil well was retained. The gas from an oil well produced and "used off the premises" was to be paid for at the rate of $50 per year for each well. Such payments were to be made "each three months in advance." It is certain enough that the parties at the time thought they had the same concept as to what was oil and what was gas. Is it a justifiable supposition that either party gave any consideration to the constituent elements of either? Presumably they knew that such elements were variable; that there were light oils and heavy oils; wet gas and dry gas; yet, for their purposes, at the time, it was deemed sufficient to make the general classification

"oil and gas," with only a little difference in the royalty and manner of payment on gas from a gas well and gas from an oil well. Should not the parties be presumed to have known the fact, which is one of common knowledge, that the one thing that principally distinguishes light oil from heavy oil, and wet gas from dry gas, is a common element in both oil and gas, namely, gasoline? When the parties stipulated one royalty and manner of payment on gas from an oil well, and a different royalty and manner of payment on gas from a gas well, is not it too clear for argument that whatever regard was being given to the nature of gas from the standpoint of its constituent elements, it did not extend to the inclusion of oil as one of them?

The judgment in this case, for its validity, depends upon our holding that the lessee, whose unqualified ownership of the gas is nowhere more definitely declared than in the Reynolds Case, has not the right to sell the natural gas from a gas well and appropriate the proceeds of sale. This court has been called upon to hold, and has held under the authority of the Reynolds decision, that gasoline is oil; that although we judicially know that to produce it in commercial quantities requires a manufacturing process, yet, if the lessee sell the gas and the purchaser can be proved to have maunfactured gasoline out of such gas, together with the amount and value thereof, plaintiff is entitled to recover same as for a conversion of his one-eighth oil royalty; and this, notwithstanding that the royalty stipulated in the lease for the gas from a gas well has presumably been paid.

In the Reynolds Case it was said: "The gas in this instance was not used off the premises." But that fact does not distinguish the cases, for in the Reynolds Case it was clearly recognized that it was not by payment of the stipulated gas royalty that the lessee became the owner of the gas, but that such royalty or rental is the agreed compensation for a thing—gas—*already granted.* (Italics ours.) The same idea is a little fuller, but in no wise more certainly, expressed by Judge Leddy in the Connellee Case, as follows: *"By the express terms of the granting clause* of this lease, all the casinghead gas or dry gas in and under said land was conveyed to and became the property of the lessee. Its only obligation to lessors with reference thereto was an agreement to pay them for any of the casinghead gas it might use. * * * Otherwise, lessors had no interest whatever in the substance defined by the express terms of the contract as 'casinghead gas.' " (Italics ours.)

The purpose already indicated, of attempting to point out certain particulars wherein it is thought the opinions in the Reynolds and Connellee Cases are in conflict, may perhaps best be accomplished by applying the several holdings in those cases to this case. Preliminary to that, however, it is necessary to show that both opinions were dealing with the same thing. For manifestly, if, after making such application, it can be answered that Judge Speer in the Reynolds Case was writing of one thing and Judge Leddy in the Connellee Case another thing, the validity of the conclusion will be largely invalidated. In the Reynolds Case the royalty provision in question was: "To pay the lessor for gas produced from any oil well and used off the premises at the rate of $100.00 per year for the time during which such gas shall be used, said payment to be made each three months in advance." The provision involved in the Connellee Case was: "For casinghead gas when sold or used off the premises, $25.00 per year for each well, payment for gas to be quarterly in advance." The oil royalty provision in each lease was, in substance, the same, and if one was an exception of one-eighth of the oil conveyed by the lease, the other was also. Both decisions recognize that the effect of each lease was to convey title to the lessee of all the gas from oil wells as certainly as casinghead gas. Do both decisions recognize that "gas from an oil well" and "casinghead gas" are the same thing? The answer may be stated by employing familiar mathematical terms, letting $X$=gas from an oil well and $Y$=casinghead gas, as follows: Both cases recognize as true, not that $X>Y$, nor that $X<Y$, but that $X=Y$. Judge Leddy says: "At the time this lease was executed, 'casinghead gas' was universally known and understood to be the gas which was emitted from a producing oil well." Judge Speer in one place says: "The grant in such a case would be general of casinghead gas or gas produced from an oil well," etc. In another: "If gas from an oil well or casinghead gas does include or contain oil," etc. And then again and even more certainly: "Now, every court must be held to know as matter of law that gas from an oil well, *called casinghead gas* because delivered at the casinghead of an oil well," etc. Nothing further, it is thought, need be said to show that, laying aside for the moment any question of the authoritativeness of the two decisions, they were undoubtedly dealing with the same thing under two different names.

Now let us attempt to apply the holdings to the case at bar. Certainly it cannot be contended that a royalty stipulated upon the gas from a well producing gas only is not as specific as a royalty on "casinghead gas." Judge Leddy says: "The fact that casinghead gas contained in vaporous form a substance which might be scientifically or in a technical sense termed 'oil' cannot have the effect of modifying or changing in any way rights of the parties to this contract, as lessee's purchase of the casinghead gas pro-

duced from any well *necessarily included all of the constituent elements it contained. It acquired these elements by its purchase as much so as it became the owner of the constituent elements contained in seven-eighths of the oil,* [italics ours] to which it also had absolute ownership, subject only to payment of the one-eighth royalty."

Can it be contended with even a show of plausibility that, if the law is as stated by Judge Leddy, the plaintiffs stated a cause of action in this case? Certainly not; but, listen to Judge Speer: "If such had been the grant, or if such is the grant, on the whole instrument—that is oil, gas and casinghead gas—still there is the more specific exception of one-eighth of all oil produced and saved from the [leased] premises, and, the exception being no part of the grant, the thing excepted remains the property of the lessor."

In other words, Judge Leddy concluded that the exception of one-eighth of the oil from the grant of "all of the oil, gas and other minerals" could not operate to take out any part of the natural constituents of the minerals other than oil. Judge Speer holds directly to the contrary, unless he further holds that the gasoline is no part of the natural content of the gas from an oil well. The latter alternative is so absolutely contrary to a common knowledge of the fact as not to be imputable. And, even if so, the decisions conflict, because the Connellee Case holds to the contrary. So, it follows that, if Judge Speer's conclusions be correct, the Connellee Case should be overruled. It further follows that this court has correctly applied the principle in the case at bar. If the exception of one-eighth of the oil will extend to the gasoline content in casinghead gas, it will certainly extend to the gasoline content in all the gas. It was a futile thing to stipulate a royalty on gas from a well producing gas only; because there is not any such thing, if the gasoline content in (so-called) dry gas is to be regarded as oil. It is a fact of common knowledge that many wells that are in common parlance wells producing gas only—such as the well in this case—may be profitably operated for the manufacture of gasoline, especially where there are favorable facilities for disposing of the relatively large portion of residue gas. Therefore, to attempt to make a distinction in this case, and either the Connellee or Reynolds Case, would be to force a distinction without a difference and introduce just one more uncertainty and contradiction into our oil and gas law. The result, above referred to, that there could be no such thing as a well producing gas only, if the gasoline content is oil within the meaning of the lease, is a factor, it would seem, that should tell mightily against any such construction.

Again Judge Leddy said: "The parties to this contract by language certain, specific, and definite, separated the various substances expected to be produced from wells drilled on the premises, and specifically fixed the compensation to be paid for each, and for this court to separate these substances in any different way or provide another and different compensation would be to substitute an entirely new contract for the one made by the parties."

Apply this to the case before us, and it calls for a different disposition. But Judge Speer's opinion holds the contrary, not only as shown by the previous quotation, but as the judgment itself necessarily implies.

Enough has been said, it is thought, to show that, laying aside any question of the merits of the two decisions, they are in certain conflict in a way that vitally controlled the two judgments. In fact, in order to demonstrate the existence of such conflict, it was necessary to go no further than to make it plain that both opinions used the terms "casinghead gas" and "gas from an oil well" interchangeably, as meaning the same thing. In other words, as already said, if $X=$"casinghead gas" and $Y=$"gas from an oil well," then $X=Y$. If, then, in any lease $A=$every provision of the lease except $X$; and in any other lease $B=$every provision except $Y$; then if, in comparing any two leases it is found to be true that $A=B$, it seems that it ought also to be true that $A+X=B+Y$. The proof of such a proposition in mathematics would be afforded by the axiom: If equals be added to equals their sums are equal. But if there be no conflict in the Reynolds and Connellee Cases, the axiom, it is respectfully submitted, does not hold good. Identically the same claim is made with reference to each of two leases. The leases are identical in legal effect, except one stipulates a royalty on "casinghead gas," and the other in lieu thereof stipulates a royalty on "gas from an oil well." Two decisions, each involving one of the leases, agree that casinghead gas and gas from an oil well are the same thing, yet pronounce diametrically contrary judgments.

In the opinion on rehearing in the Reynolds Case the two cases are said to be distinguishable because of a difference in specificness of the grant. It is there said: "If the lease had contained apt words of grant including all casinghead gas (which is known to contain oil), *the case would be different.* That character of lease is illustrated by Magnolia Petroleum Co. v. Connellee (Tex. Com. App.) 11 S.W.(2d) 158. *The lease in that case contained apt words of grant* to evidence an intention to convey all casinghead gas, which, of course, included the modicum of oil which it carried, and it was held that all such gas was therefore within the grant. *This clearly distinguishes the two cases.*" (Italics ours.)

What is it that distinguishes them? That the lease in the Connellee Case more specifically granted the "casinghead gas" than the

lease in the Reynolds Case granted the "gas from an oil well"? Certainly not that. If all the gas in both cases was certainly granted as both opinions hold, of what importance is it how specific or how general be the grant? Both opinions recognize, as said before, that it is not the royalty provision that measures either the identity or extent of the thing granted. If one royalty provision were more specific to the extent of excluding something in another royalty provision covering in part the same substance, such fact could in no wise operate to curtail or limit the grant. The fact should always be kept in mind that it is not necessary to stipulate a royalty on every mineral that may be discovered. That is purely a matter of contract.

But how can it be said that the grant of "casinghead gas" in the Connellee Case is more specific than that of "gas from an oil well" in the Reynolds Case? Aside from the fact of the acknowledged identity of the two, the grant in the Connellee Case was of "all of the oil, gas, and other minerals," while the grant in the Reynolds Case was of "oil and gas." Certainly to say that one is more specific than the other is to disclose some inadvertence or mistake in expression. Only one more point in the Reynolds Case will be noticed.

Plaintiff's right to recover in that case was undoubtedly sustained upon the one basis that the lease left in lessor title and ownership of one-eighth of the oil. The opinion abundantly recognizes that lessee was under contract to deliver to the credit of lessor one-eighth of all the oil "free of cost." Does the opinion mean to hold that one under contract to do a definite thing may be absolved from full compliance by an honest and good-faith misunderstanding of his obligation? To the writer, may it respectfully be suggested, the reasoning is incomprehensible that leads to a conclusion that A, under contract with B to deliver, free of cost to B's credit, one-eighth of all the oil, can charge B with the cost of preparing a definite amount of the oil for market, and discharge the contract obligation by delivering, not the one-eighth, but one-fourth of one-eighth. Courts have rarely, if ever, regarded the situation as one of a defendant being "mulcted in damages" by requiring him to simply perform the obligations of his contract.

All that has been said up to this point assumes that it was correctly held in the Reynolds Case that the lease there considered conveyed only seven-eighths of the oil, and that one-eighth was excepted from the grant. This holding was upon the authority of Hager v. Stakes, 116 Tex. 453, 294 S. W. 835. The writer submits that the last-named case was not sufficient authority to support such holding. If such be the law applicable to that lease, it must be deduced solely from the fact that the Supreme Court approved the opinion in the Reynolds Case. Why? Because if the leases considered in Hager v. Stakes were not all distinguishable from the lease in the Reynolds Case, and the lease involved in Ehlinger v. Clark (Tex. Sup.) 8 S.W.(2d) 666, the last-named decision, being a later expression of the views of the Supreme Court, is directly contrary to Hager v. Stakes. The lease involved in Ehlinger v. Clark was not different in legal effect from the lease we have here. It expressed the obligation of the lessee to pay a royalty on oil, thus: "To deliver to the credit of lessor, free of cost in the pipeline to which it may connect its wells, the equal one-eighth (⅛) part of all oil produced and saved from the leased premises." A moment's comparison shows that this provision is the same as in the lease here and that in the Reynolds Case. But Judge Cureton, there speaking for the Supreme Court, said: "Under the contract, as we view it, the county [i. e. the lessor] parts with its title to *all the minerals in place*, and obtains a money consideration for $4000, and, in addition, the usual one-eighth royalty from the oil produced. * * * The language of the contract * * * means plainly that an actual estate in the land, to-wit, the mineral estate, has been conveyed without reservation *as to any part of it.* * * * It is true that after the oil has been reduced to possession by the lessee and brought to the surface, one-eighth of it must be delivered to the county. Because of this there is some theoretical ground for argument against our conclusion *that the whole of the oil in place* is granted, but there exists no practical basis for difference of opinion about it. Plainly under the contract the county has surrendered its right to explore for and produce oil on the premises, including the so-called one-eighth royalty. Without the right to explore for and produce this one-eighth of the oil, the right is utterly worthless. It has no value for any practical purpose. * * * We think, therefore, regardless of the language used, the proper interpretation of the contract is that the county, has sold *the whole* of its mineral estate in the land, subject, of course, to the terms of the contract with reference to exploration, deferred drilling, etc. We think the purchase price is the $4000 evidenced by the notes specified in the contract and one-eighth of the oil, *not as it existed in place,* but after, by the expensive process of exploration, drilling, and production, the oil has been captured and reduced to possession, produced at the surface of the earth, and delivered at the intake of the pipeline *as personalty.* The oil when thus delivered is not only a different thing from the same amount of oil hidden away in the bowels of the earth, but represents a *different type of estate.*" (All italics ours.)

Liberal quotation has thus been made from Judge Cureton's opinion because there is not a word of it that is not equally applicable to this case and the Reynolds Case. Since the Reynolds Case is wholly premised upon the

correctness of the proposition that the lease by its terms excepted from the grant one-eighth of the oil, how are we to account for the fact of the Supreme Court's approval of that opinion? Such fact, as I see it, may be accounted for in two ways. Either the Supreme Court has thus indirectly and by implication, and without discussion or even mention, determined that its holding in Ehlinger v. Clark, supra, and Theisen v. Robison, 8 S.W.(2d) 646, and wherein that court was but reasserting what had previously been determined in Stephens County v. Mid-Kansas Oil & Gas Co., supra, was all wrong, or else that overworked tribunal, laboring under the operation of the most prolific error-producing system that could well be devised, and thereby denied the opportunity of original research and calm deliberation, has simply been led into one more inevitable mistake. The writer with his personal knowledge of the great learning and ability of the two judges who wrote the opinions in the three cases last mentioned simply cannot bring himself to believe that the conclusions therein declared, so apparently the result of extensive and painstaking study, and supported by unassailable logic, could have been intended to be swept away without a word of comment to account for such unaccountable reversal of opinion.

Though much regretting the length to which these remarks are extending, may I employ another moment or two in an endeavor to illustrate the effect of the decisions in the Reynolds and Connellee Cases by applying same to a supposed case. Let us suppose two leases well within the range of possibility; in fact, leases which the writer, in his practice, has had occasion to draw for a client. A leases land to B for the sole and only purpose of mining and operating for oil, specifically excepting one-eighth of the oil and all of the gas, with provision that the royalty oil shall be delivered free of cost, etc., and the gas to be taken possession of by A or his assigns at the mouth of the wells. At the same time A makes a similar lease to C of the gas, excepting all the oil and one-eighth of the gas as royalty, with provision that A or his assignees shall take possession of the oil at the mouth of the wells. Under the lease B drills three wells and C drills three. Each well produces on an average covering two years' time, 10 barrels of oil per day, worth $1.50 per barrel, and 1,000,000 cubic feet of rich gas, worth $500 per month. Value of oil produced at end of the two-year period, $43,800. Total proceeds of gas from the wells sold and used by the purchaser in the manufacture of gasoline, $72,000. The purchaser of the gas makes payment for the gas based in accordance with the prevailing custom, upon a per cent. of the recoverable gasoline; from which it results that the amount of gasoline made from the gas can readily be computed from the royalties paid. Of the total proceeds of production B pays A one-eighth of the oil, or $5,475. C pays A one-eighth of the gas royalty, or $9,000, leaving to B $38,325, and to C $63,000. This, it may be remarked, is the case of a very profitable lease to all concerned, at least until a suit is filed.

B sues C, alleging his title and ownership in and to seven-eighths of all the oil in, under, and that has been produced; that gasoline is oil; that C has converted by sale and appropriation of the proceeds $72,000 worth of gasoline (that being only one-fourth or one-third of the actual amount); that seven-eighths thereof is $63,000. For such amount judgment is prayed with interest, etc. Without doubt, under the Reynolds Case B can recover the $63,000 which represents every dollar C has received for the sale of his gas, exclusive of the residue, which by reason of the richness of the gasoline content is comparatively little. Under the Connellee Case there can be no recovery. If the Reynolds Case is to control, C will not only lose all his profits except the residue gas, but also the cost of drilling the three wells and two years' cost of operation. Supppose A should intervene in such suit, with the claim supported by pleading and proof that, while B had placed to his credit the $5,475, said sum represented crude oil worth $1.50 per barrel; that in truth and in fact B had refined all the oil and had manufactured therefrom gasoline of a total value of $8,000. That B had not placed to his credit the one-eighth thereof, or $1,000, and if the court holds that gasoline is oil, intervener prays that he have judgment for said $1,000.

Under the Reynolds case A can recover this additional $1,000. Under the Connellee Case his plea of intervention will be subject to general demurrer. In the Reynolds Case the lessor was permitted to take a natural element (gasoline) out of the gas; in the supposed case A will have the same right to take a natural element (gasoline) out of the oil.

The writer sincerely hopes that, if what has been said be not convincing, it is, at least, sufficient to justify the disinclination of the writer to give assent to the disposition of this case made by the majority.