# CHARLESTON.

HUNTINGTON & KENOVA LAND DEVELOPMENT CO. *v.* PHŒNIX POWDER MANUF'G CO.

Submitted January 15, 1895—Decided May 1, 1895.

1. NUISANCE.
   A mill, manufacturing powder and other explosives, and storing the same on the premises, situate on the bank of the Ohio river and near two railroads and a public road, is a nuisance *per se.* Wilson v. *Manufacturing Co.*, 40. W. Va. 413.

2. NUISANCE—MANUFACTURING EXPLOSIVES—INJUNCTION.
   When a company engaged in the manufacture of powder and other explosives, without misrepresentation or concealment on its part, is induced to locate its works at great expense on lands adjacent to the property, and for the prospective benefit of a land development and improvement company, such latter company can not, on discovering that the proximity of such powder works has diminished instead of enhanced the value of its adjoining territory, enjoin the continuance of such works as a nuisance.

SIMMS & ENSLOW for appellant, cited 2 Wood Nuis. (3d. Ed.) § 820; 1 High Inj. (3d. Ed.) § 762; 13 W. Va. 476; 32 W. Va. 6; 34 W. Va. 804; High Inj. § 34, p. 786; 80 Va. 331; Wood Nuis., § 3, p. 4; Wood Nuis., § 820, p. 804; 9 Wallace 254; 18 B. Monroe 800; 1 Johnson 78; Eden Inj. 274; 11 Humphrey (Tenn.) 406.

CAMPELL & HOLT for appellees:

I.—*The determination of the question, whether nuisance or no nuisance, when the matter complained of is not a nuisance per se, depends upon its location and the attendant circumstances; and the plant in question is not a "convenient" place.*—H. L. Cases, 648; Wood Nuis., p. 532, § 492; 34 W. Va. 804.

II.—*The utility, and even the necessity, of the business, is no defense. Neither does it make any difference that the best appliances known to science have been adopted and the greatest degree of care exercised in carrying it on.*—3 L. R. 330; 18 Minn. 324; 23 N. E. Rep. 389; Wood Nuis., §§ 73, 115, 130, 142; 8 N. Y. 579; 1 Swan. 213; 2 Scam. 67; 39 Ill. 600; 41 Ill. 502; 53 Ill. 24; 6 Hill 292; 2 N. Y. 159; 47 Ga. 263; 2 Scam. 434; 74 Pa. St. 230.

III—.*If several persons receive a private injury from a public nuisance; each man shall have his action.*—Ld. Raym. 938; 5 Rep. 72; Coke Litt. 56a; 81 Ky. 171; Cooley on Torts, p. 102, top.

IV.—*The remedy at law in such cases is not plain, adequate and complete, and equity will interfere.*—40 N. Y. 19; 8 L. R. Ch. App. 125; Woods Nuis., § 794 and cases cited.

V.—*The reconstruction of the powder mill and magazine, after the explosions thereat, and with the knowledge of the appellee, does not estop appellee; for the latter protested and actually tried to induce the abandonment of the old site.*

DENT, JUDGE:

The Huntington & Kenova Land Development Company filed its bill in chancery in the Circuit Court of Wayne county at the December Rules, 1892, against the Phoenix Powder Manufacturing Company, for the purpose of perpetually enjoining the works of the defendant as a nuisance.

The allegations of the bill are in substance as follows, to wit: That the plaintiff is a corporation for the purpose of laying out towns and selling lots therein, and doing and engaging in all manner of manufacturing and developing business of all kinds; that it owns about two thousand acres of valuable lands lying in the counties of Wayne and Cabell,

along the Ohio river, between the city of Huntington and the towns of Kenova and Ceredo; that the greater part of this land has been laid off into lots, a large proportion thereof sold, and numerous manufactories in full operation thereon; that the defendant is the owner of about fifty acres of land, on which it has an extensive plant for the manufacture of powder, dynamite, and other explosive substances, and is engaged in the manufacture of the same, and keeps stores of such substances in large quantities continually on hand, thereby creating a dangerous and threatening nuisance, which is surrounded on three sides by plaintiff's land aforesaid, and especially that portion of it which has been laid off into a proposed town to be known as the "Town of Kellogg;" that by reason thereof, a large portion of plaintiff's lands had been rendered valueless for the purpose for which they were purchased, and can not be used in safety, even for the purpose of farming, and are thereby greatly diminished and decreased in value, and are undesirable and unsalable.

Defendant answered, admitting most of plaintiff's allegations, but denied that its works were a dangerous nuisance or had to any extent materially diminished the value of plaintiff's lands; that it had been induced to purchase the land and locate its works thereon by the original incorporators and principal stockholders of the plaintiff, immediately prior to its incorporation, for the prospective benefit of the plaintiff and to increase the value of its property and boom it on the market; that the plaintiff had used it for that purpose in its original prospectus and advertisements, and now that its boom had collapsed, it was endeavoring to shoulder the blame on to the defendant; that its plant has cost it at least two hundred and fifty thousand dollars, and it has built up an extensive and profitable business, and now to destroy it would produce irreparable loss, and be inequitable, especially, to do so at the instance of the plaintiff.

On a final hearing of the case the Circuit Court granted a perpetual injunction, and from its decree the defendant appeals.

There are virtually two questions presented for the consideration and determination of this Court.

*First.* Are the defendant's works a dangerous nuisance *per se?*

*Second.* Is the plaintiff in a position to invoke the aid of a court of equity for their abatement? The first of these questions has been answered in the affirmative upon about the same facts in the case of *Wilson* v. *Same* (decided at this term of the Court) 40 W. Va. 413 (21 S. E. Rep. 1035.) The first clause of the first point of the syllabus is as follows, to wit: "A mill, manufacturing powder and other explosives, and storing the same on the premises situate on the bank of the Ohio river and near two railroads and a public road is a public nuisance." Judge Brannon in his able opinion elaborately discusses the question, and arrives at a conclusion which is sustained by reason and authority and was fully concurred in by the Court, and it becomes unnecessary to repeat what has been so exhaustively treated in that case here. That the defendant's immense works were a dangerous and threatening nuisance is established beyond controversy or doubt.

The second proposition is not so easily disposed of, as it presents a question of equitable interference of the gravest character and highest importance. It is plain from the evidence that the original promoters, landowners, and now the principal stockholders and officers of the plaintiff, for the benefit of the plaintiff in enhancing its lands and rendering them salable, induced the defendant to purchase the land of them and locate its works at the present place. This it did at an immense cost, and the works as they now stand are estimated at over two hundred and fifty thousand dollars in value. Afterwards it is discovered that instead of the defendant's works being an advantage to, they actully diminish and almost totally destroy the value of a large portion of its lands for the purpose for which purchased, and the plaintiff becomes as anxious to rid itself of the defendant as before its original promoters and many of its stockholders and officers were anxious to have it come and locate in their midst; that is, including its immediate predecessor, the Continental Powder Manufacturing Company, from whom defendant derives its title.

When the plaintiff found out the injury the defendant's works were to its land, it endeavored to get the defendant to move them to another point, and as an inducement, offered to take the land at ten thousand dollars, give a note for ten thousand dollars, and five hundred acres of land, and put in a switch. The defendant declined this offer, for the reason, as claimed, the offer would be nothing in comparison with the loss from removal. Those representing plaintiff then notified defendant that "we propose to have you go up in the valley, if not by fair means, by foul." There is some little attempt in the evidence on behalf of plaintiff to show that the agents of the defendant misrepresented the dangerous character of its works, but there is no allegations in the pleadings to this effect, and the evidence on the subject is at least a stand-off. The promoters of plaintiff, being men of wide business experience, were certainly aware of the dangerous nature of powder and dynamite, although not acquainted with the manner of their manufacture.

Plaintiff, failing to make an offer sufficient to justify defendant to remove, instituted this suit in furtherance of the threat to use fair or foul means. The defendant has indicated its willingness to move, provided it receive a sufficient consideration to cover the loss occasioned thereby. There is no evidence to show what this loss would be, other than it would be greatly in excess of the offer submitted by the plaintiff. This offer is not claimed to have been, nor is there any proof to show that it would be, an ample indemnity to the defendant, but counsel insist that it was a mere proffer of charity. If the evidence had shown that the amount offered was a sufficient indemnity to defendant, and was made and continued for that purpose, plaintiff would have had a much surer standing in a court of equity. But, from the pleadings and evidence in this case, the only question in controversy is as to which of the parties to this suit should bear the expense of the removal of defendant's works to a more suitable location, and this is still narrowed down to the difference between the proffer made and the actual expense of the removal; and because the defendant will not make the re-

moval unless this expense is secured to it, plaintiff seeks the assistance of a court of equity. A "fair means" to have otherwise accomplished its purpose would have been to have assumed this expense.

Defendant was sold the land and granted the privilege of constructing its works by those under whom plaintiff claims, for plaintiff's benefit, and did so construct its works, and has not enlarged them beyond the original intention as understood by plaintiff, as is shown by its prospectus. *Bankart* v. *Houghton*, 27 Beav. 425. Defendant has suffered serious losses by several explosions through the negligence of its employes or the interference of others. Its damages have not been less than those of plaintiff from these accidents, while its expenses for rebuilding and repairs have been very great, and for these reasons, plaintiff asks the entire destruction of its works, without recompense. Is this equity? Should the plaintiff, a speculative corporation, be permitted to induce various kinds of manufacturers to purchase of its lands, make great outlays in creating plants, and then because plaintiff ascertains that any such manufactory is an injury to the sale of others of its lands, is it to have the privilege of calling upon a court of equity to destroy the property and investment of those who have been induced to purchase of it in good faith, and without any attempt to deceive it as to the character of the manufactory to be established? Plaintiff says, "I was mistaken." Equity says: "Make good the loss the defendant will incur, and you will be relieved of its obnoxious presence; otherwise, you must bear it as a burden of your own assuming. At least, a court of equity will not lend you its assistance under such circumstances. If you would be heard, come with clean hands and a righteous cause."

A person who licenses, permits, or acquiesces in the establishment of a costly and expensive nuisance can not invoke the aid of a court of equity, even though it prove more annoying and injurious than he anticipated, but he will be left to his remedy at law, if any. If he can not sue at law, neither can he sue in equity. 16 Am. & Eng. Enc. Law 960; 2 Wood. Nuis. §§ 785, 804, 805, 806; *Hulme* v. *Shreve*, 4 N. J. Eq. 116.

"A person may so encourage another in the erection of a nuisance as not only to be deprived of the right of equitable relief, but also to give the adverse party an equity to restrain him from recovering damages at law for such nuisance." *Williams* v. *Earl of Jersey*, 1 Craig & P. 91; *Carlisle* v. *Cooper*, 21 N. J. Eq. 576; Eden Inj. 274; High. Inj. § 756; *Whitney* v. *Railway Co.*, 11 Gray 359; *Swain* v. *Seamens*, 9 Wall 254.

For the foregoing reasons, the decree complained of is reversed, injunction dissolved, and bill dismissed.