### C. W. STANDART v. C. H. VIVION ET AL.

Decided November 15, 1899.

**1. Injunction—Water Rights.**

Plaintiff having leased lands traversed by a ditch which was taken out from a creek several miles above the land, was not entitled to have abated, by injunction, a dam built across the creek a mile above his land and prior to the lease, where his petition did not show that the dam had caused any interference with the flow of water in the ditch.

**2. Same—Agreement Affording No Ground for Injunction.**

An agreement with plaintiff by defendant, the owner of the dam, admitting plaintiff's right to a sufficient flow of water down the ditch for his use could afford plaintiff no ground to have the dam abated by injunction.

APPEAL from Kinney. Tried below before Hon. WALTER GILLIS.

*Clamp & Harris,* for appellant.

*Joseph Jones* and *J. S. Morin,* for appellees.

JAMES, CHIEF JUSTICE.—Petition for injunction, to which a general demurrer was sustained.

The following facts, among others, appear from the petition:

That plaintiff Standart had leased for three years from June 1, 1899, about 4500 acres of land consisting of ten contiguous surveys, six of which were traversed by what is known as Mud Creek, which begins about four miles above said land. That plaintiff's lessors, with other owners of land along said creek, had several years ago constructed the "Mud Creek Irrigation Ditch," which was taken out of said stream several miles above the land so leased to plaintiff, which ditch by common consent and usage and for the convenience of all the riparian owners upon said creek had for many years prior to the erection of defendant's dam (which dam was alleged to be about a mile above plaintiff's land, and to have been constructed across the bed of the creek about 1888) carried most if not all the waters of Mud Creek in said ditch's channel, and when, in cases of excessive rainfall and overflow, the water would flow over said dam, it would follow the course of the said ditch, and that the ditch is more direct in its course, causes much less loss of water, and is so constructed that it is more convenient to the lower owners and to plaintiff than when flowing in its natural channel. That the ditch traverses several of plaintiff's leased surveys. Annexed to the petition is a sketch of the creek and of the ditch, showing the relative situation of both.

The above facts taken from the petition show that the ditch is practically the stream from about its source some miles above plaintiff's lands and above defendants' dam; that it carries practically all the water afforded by the stream; that the dam across the bed of the creek is no obstruction to the ditch, and that plaintiff's lessor had an interest in said ditch in respect to furnishing water to the lands in question.

It is not necessary we think to refer other matters alleged in the petition in view of the prayer. The prayer was for an injunction to restrain defendants "from maintaining said dam, or from diverting the natural flow of the stream, or in any manner interfering with the natural flow of said stream; or in the alternative to restrain them from interfering with the full flow of the stream into and down the ditch, and for removal of the dam, if same is necessary to give plaintiff the full flow of the stream down the ditch."

We are of opinion that plaintiff has not shown a case for the remedy he seeks. Nowhere is it alleged that defendants have interfered (otherwise than by said dam) with the flow of water in the ditch, which appears to have been substituted for the creek. The dam is not across the ditch. The ditch being taken out of the creek above the dam, and carrying, as is alleged, most if not all the water of the creek, and extending upon plaintiff's land, it is inconceivable how damming the creek could

materially affect plaintiff's supply of water. If no water flows into the ditch, or upon plaintiff's land, and the facts concerning the ditch are as alleged, then this must be from some obstacle in the ditch below its source and above plaintiff's land, and nothing of this sort is shown. If the allegations concerning the normal flow of water into the pond above the dam be true (and they could not be true if the ditch practically drained the stream), then such fact must result from some defect in or obstruction to the ditch, which is not disclosed, and for which neither defendants nor their dam appear to be responsible. Under these circumstances the destruction of the dam, or interference with defendants' use of the water collected by means of the dam, would seem to be unwarrantable.

Plaintiff could not have any better right to complain of this dam than his lessor had. The dam was there when he leased the land, and had been for many years, also the ditch, which plaintiff alleges appropriated, or could appropriate the water of the creek. The lessor was part owner of the ditch, and presumably had such control over it as to keep it in operation, and he need not, under these conditions, have been subjected to any injury by reason of the dam. He could not under the same allegations have maintained this suit as a means of getting water on the land in question. Nor can plaintiff do so, he having leased the land apparently with knowledge of the situation.

The petition sets up, as another ground for the injunction, the fact that defendant Vivion had entered into an agreement with plaintiff admitting plaintiff's right and the right of all other riparian owners along the Mud Creek irrigation ditch to a sufficient quantity and flow of water down said ditch for domestic and live stock purposes, and agreeing, as far as the owner was concerned, to allow and permit to flow down said ditch sufficient water for said owners for said purposes, the plaintiff agreeing to keep said Mud Creek ditch free of obstructions and reasonably clean, and the banks and borders so constructed as to prevent wastage, or cause same to be kept so as to afford a free and uninterrupted flow down said ditch.

The agreement just referred to was entered into by Vivion in order to prevent plaintiff from filing a suit for injunction in substance the same as the present one, which was then in the act of being brought.

Whatever plaintiff's rights may be by virtue of this agreement, it can not be made the foundation of a suit to prevent the maintenance of the dam, because it is clear that its purposes contemplated the continuance and maintenance of the dam in such manner (as the petition states) that water be permitted to flow down the ditch. It is manifest from the agreement in connection with the allegations in the petition that the purpose of the agreement was that Vivion should not materially divert the water taken out of the creek above his dam from the necessary uses of the owners along the ditch below, but should allow enough to pass into the ditch for such use. This contract was not an agreement that plaintiff should have the right to have the dam abated. Its provisions

were such that plaintiff was not precluded, by anything contained in it, from proceeding with his injunction suit in case Vivion .violated the agreement, but grounds for removal of the dam would have to exist independently of the agreement, for the agreement was based on the continued existence of the dam.

We have explained our reasons for holding that the allegations (outside of said agreement) were such as failed to show plaintiff entitled to interfere with the dam; and we have discussed the agreement in order to show that it afforded no additional ground for the relief asked, which was in substance the removal of the dam.

The judgment will be affirmed.

*Affirmed.*

Writ of error refused.