### CRAWFORD et al. v. MAGNOLIA PETROLEUM CO.

No. 4021.

Court of Civil Appeals of Texas. Amarillo. June 28, 1933.

Reynolds & Heare, of Shamrock, for appellants.

Morgan, Culton, Morgan, & Britain, of Amarillo, for appellee.

HALL, Chief Justice.

Lewis Crawford, for himself and as next friend for his minor son, filed this suit against the Magnolia Petroleum Company to recover for damages alleged to have resulted to them by reason of the fact that the Petroleum Company permitted smoke and smut from its carbon-black plant to be blown onto premises which they had leased and upon which they raised a crop of cotton in the year 1930 and another in the year 1931.

The substance of the amended petition upon which the case was tried is that in the year 1930 they produced in Wheeler county on land adjoining the defendant's carbon-black plant, nineteen bales of cotton. That while the cotton was maturing and opening in the field, the defendant wrongfully operated in close proximity to said cotton field a carbon-black plant which produced smoke and which the defendant suffered to go into said cotton patch and blacken his cotton, decreasing the market value thereof in the sum of $198.98. That the plant so operated constituted a temporary nuisance maintained by the defendant to plaintiffs' damage.

Practically the same allegation is made with reference to the cotton crop grown upon the same premises in the year 1931.

They further allege that in 1931 they raised and gathered forty-five tons of maize and kaffir corn from said premises. That the operation of the plant produced smoke which defendant wrongfully caused and suffered to go into the field of feed and blacken and injure and greatly damage it, reducing its market value $1 per ton, to plaintiffs' damage in the sum of $45. That while it was so being operated it constituted a temporary nuisance.

The defendant answered by general demurrer and general denial and specially alleged that its carbon-black plant was constructed on ten acres of land out of section 39, block 24, in Wheeler county, title to which tract it acquired on May 11, 1927. That on said date it purchased the surface rights in the land on which the plant is located from Mrs. E. A. Worley, who owned that and other lands in that vicinity, including the land on which the crops raised by plaintiffs were grown. That at the time defendant purchased the land from Mrs. Worley it was explained to her that defendant desired the land for the purpose of constructing and operating a carbon-black plant thereon in order to more fully develop the mineral resources of that particular portion of Wheeler county, Tex., and particularly the mineral resources of lands belonging to Mrs. Worley. That it is a fact well known to Mrs. Worley at that time that a carbon-black plant cannot be operated without smoke going therefrom to the lands in the vicinity. That defendant paid her the sum of $1,000 for said ten acres, of which approximately $75 represented the reasonable value of the land actually acquired. The remainder of the consideration was paid Mrs. Worley for such damages to surrounding lands, if any, as might be caused by the construction and operation of the carbon-black plant, and that thereby there was a complete satisfaction of any damages that might thereafter accrue to Mrs. Worley from the lawful operation of said plant. That said plant was at all times operated in a lawful manner. That shortly after it purchased said ten-acre tract in 1927, defendant constructed the plant and such damages as landowners in that vicinity received by reason of such construction and operation became fixed and that the plaintiffs hold rights in the lands on which said crops were raised solely as tenants of the said Mrs. Worley and are bound by any failure on her part to assert claims for damages, and in this connection the defendant says that plaintiffs' right, if any, to recover is for this reason barred by the two-year statute of limitation,

inasmuch as Mrs. Worley, as landlord, is barred by such statute.

Defendant further says that at the time plaintiffs leased said premises subsequent to the construction of said plant, they knew that in the operation thereof dirt and smoke would necessarily go across their land, and they knew, or were charged with notice of the fact, that defendant had acquired the property from Mrs. Worley for the purpose of constructing and operating a carbon-black plant thereon and took that fact into consideration in their rental agreement with the said Mrs. Worley, or at least are charged at law with having taken such fact into consideration, and that plaintiffs cannot now claim or assert any rights against defendant which could not be asserted by the said Mrs. Worley.

The court instructed the jury to return a verdict in favor of the defendant, and judgment was rendered accordingly.

The first two propositions urged by the appellants are submitted together; the first being that where the plaintiffs were tenants in 1930 and 1931, occupying the land adjoining defendant's plant, and their crops were damaged during said years by smoke from the plant, which lessened the market value of said crops and suit was filed for the damages within two years, it was error for the trial court to instruct a verdict in favor of the defendant, even though the site for the plant had been purchased by the defendant from the plaintiffs' lessor in 1927 and the plant constructed soon thereafter. By the second proposition the appellants insist that where the defendant permitted smoke to escape from its plant and go on plaintiffs' land, injuring the crops thereon in the sum of $392.19 in 1930 and $122.64 in 1931, and it was undisputed that more than half the smoke which lodged on the growing crops and caused the damage came from the defendant's plant, the trial court should have instructed the jury to render judgment in favor of the plaintiffs against the defendant for the sum of $257.41.

■ Neither of these propositions directly challenges the action of the court in directing a verdict against plaintiffs, but under R. S. art. 1757 (as amended by Acts 1931, c. 45, § 1 [Vernon's Ann. Civ. St. art. 1757]), we are authorized to consider the assignments of error in which the court's action in giving a peremptory instruction is criticized.

The material facts which do not seem to be controverted, and upon which the case may be decided, are, in substance, that Mrs. Worley, joined by several of her neighbors, on February 20, 1926, in consideration of $6,400 paid to them, executed to the Magnolia Petroleum Company an oil and gas lease conveying 320 acres out of section 39, block 24, in Wheeler county. The lease recites that Mrs. Worley owned the N. E. ¼ of said section and states the ownership by other grantors of certain interests in the remainder of the land. By the terms of the lease the defendant was authorized to explore and operate the whole 320 acres as an undivided tract and "to conduct all operations and erect and use thereon all such buildings, derricks, tanks, structures, machinery and equipment as might be necessary for the purposes of the grant." Provision was made for the payment of royalties from minerals which might be produced, and it was further stipulated: "The use of the surface of the land is hereby granted only so far as it may be necessary to conduct said drilling or mining operations hereunder, including the searching for, producing, saving, storing and transportation of said minerals." Gas was discovered by the defendant, and thereafter, on May 11, 1927, Mrs. Worley executed a deed conveying to the defendant the surface right of ten acres of land out of the S. E. portion of said section. It was shown that she was paid $1,000 consideration for the conveyance, and defendant's representative testified that he told her the company wanted the land for constructing thereon its carbon-black plant. At first she said she did not want smoke from the plant and preferred that the company get ten acres from some other person, but further stated that she wished to get development there and rather than retard development she would let the company have ten acres at $100 per acre. The plant was constructed in the summer of 1927. The plaintiff Lewis Crawford testified that he went there occasionally and noticed the smoke from the plant and that the wind would blow it. That he knew at that time that during falling weather there was a tendency of the smoke to fall to the earth quicker than during dry weather. That he knew Mrs. Worley had conveyed the surface where the plant was located to the Magnolia Petroleum Company and had knowledge of all these facts before he entered into a rental contract with Mrs. Worley. At the time the lease contract was made in 1930, the company had one well on the land which was connected with the plant. Subsequently other wells were drilled. The record shows that the company has placed substantial improvements upon the ten acres, consisting of a storage building 50x80 feet, with a wooden floor; a press room 45x60 with concrete floor and corrugated sheet iron walls; a packer room 50x60 with concrete floor; a cooling shed 20x90 with concrete floor; and thirty-six unit burner buildings each 40x10x6 feet. That defendant was running gas from two wells on Mrs. Worley's land and burning about 2,500,000 cubic feet per day from said wells. It was shown that the plant was being operated in the usual and ordinary way. It was neither alleged nor shown that the defendant was guilty of negligence in constructing or operating it, the allegation being that it was wrongfully operated.

In support of the court's action in directing a verdict, the appellee submits five counter propositions, as follows:

"1. The ten acres having been purchased by the defendant from Mrs. Worley, for the purpose of erecting and operating a carbon black plant, and Mrs. Worley being aware that the necessary operation of the plant would cause smoke to go across other lands belonging to her, she, in effect, became a party to the construction of such plant, and in the absence of pleading and proof showing negligence in the construction or operation of the plant, could recover nothing by way of damages to her adjoining lands, or the crops raised thereon.

"2. The plant having been constructed with the knowledge, acquiescence and cooperation of Mrs. Worley, is, as to her, not abatable if it is a nuisance. Therefore, if she was not compensated for the damages to her surrounding lands, by the money received by her in payment for the ten acres, and if in law she is not required to accept the sum then paid her as full payment for all damages incurred by her as a result of the proper operation of such plant, then the nuisance, if it be such, was a permanent one, and her damages became ascertainable when it first appeared that smoke therefrom would go across her remaining lands. The evidence showed that this became apparent shortly after the plant was first constructed. Her rights to damages are therefore barred by the two year Statute of Limitation.

"3. The right having been granted by Mrs. Worley to the defendant, to construct and operate on said ten acre tract, a carbon black plant, carried with it a right in the nature of an easement, by implication, to do everything necessary to the enjoyment of the right granted. The evidence shows there is no way by which the passage of this smoke across the plaintiffs' land could be prevented, in the proper operation of the plant. The defendant therefore, by purchasing this tract for the purpose of using it in the making of carbon black, acquired a right similar to an easement, to operate the plant without being responsible for consequent damage to crops on other lands belonging to Mrs. Worley.

"4. The plaintiffs having acquired their lease after the construction of the plant, and after they had ascertained that in the operation of such plant, smoke would go across the land, and after having received notice that the defendant had acquired its plant site from their lessor, are conclusively presumed to have taken note of the necessary operation and effect of said plant, in payment of the consideration for their lease contract.

"5. The plaintiffs being tenants of Mrs. Worley, under an estate created after the construction of the plant, hold no greater rights than held by Mrs. Worley, and since she could recover nothing for damages if the crops raised on the land had been raised by her, the plaintiffs will likewise be denied recovery."

The foregoing counter propositions in the main are correct and we believe they are supported by the testimony.

■ By the first and third propositions the appellee insists that because Mrs. Worley was paid a consideration for the land upon which the plant was situated and at the time of the conveyance knew that the operation of the plant would result in emitting smoke, smut, and soot, that she is barred from recovery upon the ground that she has acquiesced in the construction of the plant, authorized its construction with the knowledge of what would result, and for a consideration has expressly consented and encouraged its construction.

"The familiar maxim volenti non fit injuria succinctly expresses the general principle that one may not recover damages for an injury received at the hands of another, with his own consent, unless it arises from some act which is in itself a breach of the peace. Under this rule, one may not complain of a nuisance the creation of which he concurred in or countenanced." 1 Tex. Jur. 630, § 23.

In 1 C. J. 971, § 65, the rule is thus expressed: "It is a well recognized maxim of the law that a person can not recover for the consequences of an act which he himself has procured or consented to."

"It is true as a general proposition that one who voluntarily places himself in a situation whereby he suffers an injury will not be heard to say that his damage is due to a nuisance maintained by another, a principle which is expressed by the maxim volenti non fit injuria. The test of liability here, as in other situations, is the knowledge of the plaintiff respecting the consequences of his conduct. If it appears that he foresaw or might have foreseen the injury of which he complains, he will not be granted the relief which he prays." 20 R. C. L. 495, § 110.

"It is held by the weight of authority that one who consents to, permits or acquiesces in the erection of a structure with knowledge of the purpose to which it is to be put and the consequences of its erection and use, will not be heard to say that the building or its uses are productive of a nuisance. * * * Likewise it has been held that the owner of an apartment house can not, after encouraging the erection of private garages in the neighborhood for the accommodation of it and its tenants, enjoin their use because their operation in an ordinarily careful manner proves to be a nuisance. * * * In like manner a structure can not be complained of as a nuisance by a person who has licensed its construction." 20 R. C. L. 496, § 112.

"A right to maintain a private nuisance may rest in a license from the individual affected by the licensee's offensive conduct and,

in an action seeking redress for such a nuisance, if the defendant can show an authorization from the plaintiff, he thereby completely discharges himself from liability." 20 `. C. L. 503, § 119.

The oil lease from Mrs. Worley to the appellee empowers the grantee "to conduct all operations and erect and use thereon all such buildings, derricks, tanks, structures, machinery and equipment as might be necessary for the purposes of the grant." The purpose of the grant was to produce, save, store, and remove the minerals in and under the leasehold. Gas in place is a mineral. Stephens County et al. v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566. Provision was made for the payment of royalties from production and the instrument recites "the use of the surface of the land is hereby granted only so far as may be necessary to conduct said drilling or mining operations hereunder, including the searching for, producing, saving, storing and transportation of said minerals." Both the oil lease and the deed from Mrs. Worley to the appellee, by express terms, bind their assigns and the covenants therein contained run with the land. 12 Tex. Jur. 51, § 33 et seq.

That a person may so encourage another in the erection of a nuisance as not only to be deprived of all equitable relief, but also to give the other party immunity from damages and to estop the first party from attempting either to abate the nuisance or recover damages therefor, is sustained by numerous authorities. Carlisle v. Cooper, 21 N. J. Eq. 576; Huntington Development Co. v. Phoenix Powder Co., 40 W. Va. 711, 21 S. E. 1037; Buchanan v. Logansport, etc., Ry. Co., 71 Ind. 265; Sprague v. Steere, 1 R. I. 247; Mahoney Land Co. v. Cayuga Investment Co., 88 Wash. 529, 153 P. 308, L. R. A. 1916C, 939, Ann. Cas. 1916C, 1234.

In Karcher v. City of Louisville, 213 Ky. 824, 281 S. W. 1010, 1013, the plaintiff sought to recover damages for the maintenance by the city of a public incinerator in the vicinity of his residence. It appeared that the plaintiff had, through his own efforts, sold the property on which the incinerator was placed, to the defendant, knowing that it was to be used for that purpose. The court held that if the plaintiff, complaining of the operation of the incinerator on property sold by his wife to the city through his own efforts, might have foreseen the injury of which he complained, at the time of making the sale, he is not entitled to relief therefrom, and after detailing the facts, the court said: "He was thus cognizant of the purpose for which the city desired the incinerator, and with that purpose in mind sold the plant for his wife to the city, to be used by the city in burning and destroying all garbage including dead animals. * * * He voluntarily placed himself in a situation whereby he suffered an injury, but which is aptly expressed by the old maxim, volenti non est injuria."

Other cases announcing the same principle are Scheel v. Alhambra Mining Co. (C. C.) 79 F. 821; Himrod v. Fort Pitt Mining & Milling Co. (C. C. A.) 220 F. 80.

In Goldnamer v. O'Brien, 98 Ky. 569, 33 S. W. 831, 36 L. R. A. 715, 56 Am. St. Rep. 378, the Court of Appeals of Kentucky quotes from Cooley on Torts as follows: "On the other hand, Mr. Cooley in his work on Torts (page 163), says that 'consent is generally a full and perfect shield, when that is complained of as a civil injury which was consented to. A man cannot complain of a nuisance, the erection of which he concurred in or countenanced.' "

Of the maxim, "Volenti non fit injuria," Broom, in his work on Legal Maxims, says: "In actions founded on tort, the leave and license of the plaintiff to do the act complained of constitutes a good defense by reason of the maxim volenti non fit injuria and as a rule a man must bear loss arising from acts to which he has assented."

We think these authorities establish beyond question the proposition that Mrs. Worley could not recover damages resulting to her property by reason of the operation of the plant in the usual manner.

The next contentions to be considered are under appellee's fourth and fifth counter propositions.

Appellee insists that because Mrs. Worley is estopped by her deed and oil lease from recovering damages, the appellants having leased after the construction of the plant and with full notice, they have no greater rights than their lessor.

Stated more in detail, the appellee's contention is that the oil lease and deed conveying surface rights for a sufficient consideration, expressly and by necessary implication authorized appellee to construct and operate the plant and are not only an estoppel, but are tantamount to a release by Mrs. Worley of all damages resulting therefrom; that the covenants therein contained run with the land and therefore bind lessees; that they by express grant create an easement in favor of the company which is binding upon the assignees of both the dominant and servient estates, and because plaintiffs are lessees, taking with notice of appellee's rights and having no greater rights than their lessor, Mrs. Worley, they cannot recover.

As said in 8 A. L. R. 614, note V: "On the question whether damages accruing during a tenancy, from a nuisance existing before the commencement of the term, or at the time of the renewal of the lease, are recoverable by the tenant, the authorities are not abundant, and there is some conflict in the decided cases."

Appellants cite this note; but none of the cases, in our opinion, are applicable to the instant case. We are not considering a case where a nuisance has been created by a third party without express authority from the lessor and damages are sought to be recovered by a tenant with notice that damages will accrue. There is no element of estoppel in such case and the maxim, "Volenti non fit injuria," does not apply. The rule applicable to the facts of this case is stated in 36 C. J. 110, as follows: "A release by the owner of land of all claims for damages which he has or he or his assigns may have for injuries from the maintenance of a particular structure bars recovery by a subsequent tenant with notice of such release for injuries so caused and the recording of the lease is notice thereof to a subsequent lessee." Citing Gulf, etc., R. Co. v. Thornton (Tex. Civ. App.) 109 S. W. 220, 221.

From the language of the deed, and the lease, we must presume that Mrs. Worley has been compensated for all damages which might accrue, either to the freehold or leasehold. It is clear that she could not recover if the crop of cotton had been planted and was owned by her. To hold that while she is in a position of having consented to the injuries and cannot recover, that she may by a species of legal legerdemain lease her land to tenants and thereby vest them with the right to sue for damages which she could not recover, would be to open a door for fraud.

In the Thornton Case, supra, it is said: "By an instrument in writing executed by Stewart [the owner of the land] on said May 11, 1903, in consideration of $1 paid to him, and of appellant's undertaking to construct a crossing over its tracks at a point specified, he released and forever discharged appellant 'from any and all claims for damages' he had or thereafter might have 'by reason of the construction and maintenance of the roadbed or embankment so to be constructed, causing overflow over any of said lands or any other lands' then or thereafter owned, occupied, or held by him 'for all time to come.' In the instrument was this declaration: 'This agreement shall inure to the benefit of the successors and assigns of said railway company, and shall run with the land, and be binding on the heirs, assigns, executors, and administrators of the said B. M. Stewart.' The instrument appears to have been filed with the proper officer for record May 23, 1903. In the fall of 1904 Stewart rented his land to appellee, who made a crop thereon during the year 1905. In 1904 appellant commenced the work necessary to make the change in the location of its line of railway contemplated at the time Stewart executed the release referred to, and the solid embankment contemplated was constructed, it seems, during the year 1905. In the fall of the last-mentioned year Stewart again rented the land to appellee, who made a crop on it during the year 1906."

Later the crop was damaged by an overflow and Thornton, the tenant, sued to recover. In denying him a recovery, the court said: "The contract was one Stewart lawfully could make; and, if the damages in question, instead of having been suffered by appellee, had been suffered by Stewart, it is clear he would not have been entitled as against appellant to recover them without first showing that the release, for some legal reason, was not binding on him. [Citing authorities.] By the further express terms of the release it was to run with the land and operate as against Stewart's assigns. It was lawful for Stewart to so covenant; and, in the absence of a legal reason why his covenant should not operate according to its terms as against appellee, it should be enforced. * * * The release appears to have been filed for record May 13, 1903. Appellee's contract with Stewart was made long after that date, and therefore he must be held at the time he made it to have had notice of the servitude Stewart had imposed on the land. Prescott v. Beyer, 34 Minn. 493, 26 N. W. 732; Webb's Record of Title, § 48."

See, also, Standart v. Vivion, 22 Tex. Civ. App. 142, 54 S. W. 44; Gulf Pipe Line Co. v. Thomason (Tex. Civ. App.) 299 S. W. 532.

Since there was no controverted issue to be submitted to the jury, the court did not err in directing a verdict, and the judgment is affirmed.